**FOSTER et al. v. CARLIN et al.**

No. 6495.

United States Court of Appeals
Fourth Circuit.

Argued Nov. 13, 1952.

Decided Dec. 31, 1952.

944

Preston C. King, Jr., Washington, D. C. (Keith Carlin, pro se, and William M. Kabler, Alexandria, Va., on the brief), for appellants.

Glenn U. Richard, Alexandria, Va. (Andrew W. Clarke, Alexandria, Va., on the brief), for appellee Sara Perrine Carlin.

Before SOPER and DOBIE, Circuit Judges, and BARKSDALE, District Judge.

DOBIE, Circuit Judge.

Plaintiffs below (appellants here) instituted a civil action against the defendants below (appellees here) in the United States District Court for the Eastern District of Virginia. The complaint asked for the following relief:

(1) That the Court issue an order determining the alleged trust created for the benefit of appellee Sara Perrine Carlin was fraudulent in its inception and void.

(2) That the Court determine the settlement agreement, Exhibit A. to the complaint, was vitiated by fraud and that it be voided and set aside as to the stock of the defendant, appellee here, Alexandria Gazette Corporation.

(3) That the Court issue an order adjudging Charles C. Carlin, Sr., died intestate and as the owner of all the outstanding shares of stock of appellee Alexandria Gazette Corporation, and that the Court decree appellee Charles C. Carlin, Jr., and

appellant Keith Carlin each owned 50% of said stock as of the date of his death.

(4) That, if the Court determines that appellants are entitled to any of the shares of said stock, a receiver be appointed for appellee Alexandria Gazette Corporation and that appellee Charles C. Carlin, Jr., individually and as President of the Alexandria Gazette Corporation, render an accounting to appellants for all income received by appellee Alexandria Gazette Corporation and Charles D. Carlin, Jr., from 1938 to date.

The appellees filed two motions to dismiss for lack of jurisdiction. One motion was based on the theory that appellant Charles Keith Carlin, Jr., an incompetent, was not a citizen of and domiciled in the State of California but the State of Virginia at the time this suit was filed, and therefore the necessary diversity of citizenship was lacking between parties plaintiff and defendant below. The second motion was based on the theory that the lower Court did not have jurisdiction of the subject matter because the relief sought involves probate jurisdiction which is beyond the jurisdiction of federal courts. Appellees also requested the Court below to realign the parties on the ground that appellant Keith Carlin and appellee Charles C. Carlin, Jr., had a community of interest and should be parties plaintiff. As appellee Charles C. Carlin, Jr., is a citizen of and domiciled in Virginia, his alignment as plaintiff below would defeat the jurisdiction of the Court because the required diversity of citizenship would not then exist.

The District Court granted both these motions to dismiss, stating "the status of the plaintiff Charles Keith Carlin, Jr., is that of a Virginian * * *" and

" * * * this action is an appeal from, or an attempt to modify, the orders and judgments of the Corporation Court of Alexandria regarding the settlement agreement as to, and the settlement of, the estate of Charles C. Carlin, Sr., on the ground of after-discovered evidence of fraud. A careful consideration of all the evidence, circumstances and conditions indicates that propriety, comity and the law require that such appeal or attempt should be made in the state court. The controversy and the relief sought are too much involved in and too intimately a part of the settlement of the estate of Charles C. Carlin, Sr., to allow this case to be classified with the exceptions cited by plaintiffs to the general rule that federal jurisdiction does not include the probate of estates."

The District Judge discussed the question of realignment but stated: "It is not necessary, however, for the Court to make a definite realignment in view of the conclusion reached on other grounds of this motion."

We are called upon to decide three questions on this appeal: (1) Was appellant Charles Keith Carlin, Jr., an incompetent, a citizen of, and domiciled in California, or Virginia at the time this civil action was filed? (2) Does a federal court have jurisdiction of the subject matter of this civil action? and (3) Was there such a community of interest between appellant Keith Carlin and appellee Charles C. Carlin, Jr., as to require them being realigned as parties plaintiff below? These questions are discussed in that order.

The Domicile of Charles Keith Carlin, Jr.

There is little dispute as to the facts concerning the domicile of Charles Keith Carlin, Jr. He was born in Virginia, where his parents were then domiciled, in 1915. Virginia was thus clearly his domicile of origin. In 1925 he went to California with his parents and physically resided there continuously until May 24, 1942. He attended school and college in California, where he registered to vote and did vote. His mother testified that he intended to make California his permanent home. In October, 1940, while a tuition-free student at the University of California, he suffered a mental breakdown and was admitted as a voluntary patient at the Stockton State Hospital at Stockton, California. Very clearly, then, he lost his Virginia domicile and acquired California as his domicile of choice.

Paroled therefrom in September, 1941, he was returned to this hospital February 8, 1942. He was discharged therefrom as unimproved on March 16, 1942, for the purpose of being legally committed. He was thereupon adjudicated an incompetent and legally committed to that Institution on March 19, 1942, upon petition of his mother, appellant Annie Macon Carlin, by the Superior Court of San Joaquin County, California. His illness was diagnosed as "dementia praecox, paranoid form."

On May 24, 1942, he was given an "administrative discharge" and released from the Stockton State Hospital at the request of his mother in order that he could leave California under the supervision of members of his family. Still an adjudicated incompetent, he was taken by an attendant, at the expense of the State of California, from the Stockton State Hospital to Pisgah Sanitarium at Candler, North Carolina, where he was met on May 29, 1942, by his mother and his sister. His diagnosis at this Sanitarium was dementia praecox, the same as at the Stockton Hospital.

He was released from the Pisgah Sanitarium and taken in July, 1942, by his mother to his sister's home in Petersburg, Virginia. He remained there approximately five months. His condition became worse and he was removed to DeJarnette's Sanitarium at Staunton, Virginia, where he remained for about two months. He was then taken to another Sanitarium at Ivy, Virginia, where he remained about one month. The following nine or ten months, he visited with various relatives in Virginia. He was committed to the Eastern State Hospital at Williamsburg, Virginia, on October 10, 1943, upon petition of his mother. He has remained a patient at Williamsburg ever since. His diagnosis there was the same as at all other institutions, "dementia praecox, paranoid form." His mother, a citizen of and domiciled in California, qualified in Virginia as his Committee on October 31, 1945.

■ It is obvious, we think, that a Committee cannot change the State domicile of an insane person. This was clearly decided in Commonwealth v. Kernochan, 129 Va. 405, 106 S.E. 367, 369, 30 A.L.R. 601, quoting Minor on the Conflict of Laws:

"This case is closely analogous to that of the guardian's power to change an infant ward's domicile * * *. As to the lunatic's municipal domicile, it seems that the guardian has the power, but not so with respect to his national or quasinational domicile. His latter domicile will remain unchanged regardless of the place of his actual residence. He will retain the domicile he possessed before he became insane upon the principle that a domicile once acquired is retained until another is gained."

■■ One who has been adjudged incompetent may change his domicile if, but only if, he has, since the adjudication of incompetency, acquired sufficient understanding and mental capacity to make an intelligent choice of domicile. After such adjudication, the burden of proving the subsequent acquisition of sufficient mental capacity is plainly on him who alleges it. See, Coppedge v. Clinton, 10 Cir., 72 F.2d 531; McCampbell v. McCampbell, D.C., 13 F.Supp. 847, 849.

A careful study of the record convinces us that at no time after his return to Virginia did Charles Keith Carlin, Jr., possess sufficient mental capacity to select a domicile in Virginia. This seems clear from the undisputed testimony of Theodore Droste, Charles E. Foster, Ann Macon Foster and Annie Macon Carlin, the last two being the sister and the mother respectively of Charles Keith Carlin, Jr.

We need not here be concerned with whether Annie Macon Carlin, a citizen of California, was guilty of fraud when she procured her appointment in Virginia as Committee of Charles Keith Carlin, Jr., and brought about his admission to the Eastern State Hospital in Virginia. As we have indicated, no such acts of hers could be effective to change the state domicile of Charles Keith Carlin, Jr., from California to Virginia.

■ We conclude, then, that Charles Keith Carlin, Jr., at the time this civil action was instituted, was domiciled in

California, and that the District Court erred in holding that his domicile was in Virginia.

Jurisdiction over the Subject Matter.

Charles C. Carlin, Sr., died .on October 14, 1938, leaving surviving him a wife, Lillian, and two sons, Keith Carlin and Charles C. Carlin, Jr. On October 18 two testamentary documents each purporting to be the last will and testament of decedent, and a revocation of one of them, were filed in the probate courts of Alexandria, Virginia, and the District of Columbia. Thereafter Charles C. Carlin, Jr., represented to Keith Carlin that during his lifetime their father had created an *inter vivos* trust of an undisclosed number of shares of the Alexandria Gazette Corporation in favor of appellee Sara Perrine Carlin, daughter of Charles C. Carlin, Jr., and had made a gift of the remaining shares to him. Acting upon these representations, the two sons and their mother entered into a family settlement agreement under the terms of which Keith Carlin relinquished any claims on this stock in consideration of a conveyance by Charles C. Carlin, Jr., to him of his one-half interest in a certain apartment house in Washington, D.C. Both sons agreed to make certain payments to their mother in lieu of dower. In 1939 a proceeding was begun in equity to authorize a Committee for appellee Charles C. Carlin, Jr., who had become incompetent, to execute the agreement for him. Subsequent to the execution of the agreement, which provided that the probate of Charles C. Carlin, Sr.'s estate would proceed as if he had died intestate, the probate court so decreed and decedent's property, with the exception of the stock and the apartment house, was distributed in 1947. In 1951, appellant Keith Carlin learned that the representations of his brother, Charles C. Carlin, Jr., were false and fraudulent, and instituted this action.

■ The law is well settled that the federal courts ·have no jurisdiction over matters within the exclusive jurisdiction of state probate courts. However, as. to matters which do not involve administration of an estate or the probate of a will, but which may be determined in a separate action *inter partes* in the courts of general jurisdiction of the state, the federal courts do have jurisdiction if the requisite diversity of citizenship exists.

"In each case the jurisdictional question can be decided by determining whether the action could be maintained in a state court of general jurisdiction in the state where the federal court sits." Illinois State Trust Co. v. Conaty, D.C.R.I., 104 F.Supp. 729, 731, citing Ferguson v. Patterson, 10 Cir., 191 F.2d 584.

Thus, in the Ferguson case, supra, where under Oklahoma law the probate court did not have jurisdiction to construe provisions of a will, this being an issue which must be decided by a court of general jurisdiction, a question involving interpretation of provisions of the will was held to be within the jurisdiction of the federal court.

In Waterman v. Canal-Louisiana Bank Co., 215 U.S. 33, 30 S.Ct. 10, 54 L.Ed. 80, suit was brought in the federal court to test the validity of certain legacies under a will which had been duly proved in the probate court of the state, where the executor of the will had qualified and possessed itself of the property. It was held, that while the federal court could not seize and control the property in the possession of the state court, and had no jurisdiction of a purely probate character, it could as a court of chancery exercise jurisdiction, if there was proper diversity of citizenship, in favor of creditors, legatees, and heirs to establish their claims and have a proper execution of the trust as to them. The court retained jurisdiction of the suit in so far as it concerned the validity of the legacies in controversy. See also Harrison v. Moncravie, 8 Cir., 264 F. 776, particularly pages 779, 780.

In Art Students' League of New York v. Hinkley, D.C.Md., 31 F.2d 469, affirmed 4 Cir., 37 F.2d 255, the federal court was held to have jurisdiction of a suit by a legatee under a will for construction of the will, involving determination of whether a gift bestowed on complainant was val-

id, notwithstanding the fact that a trust created for the benefit of decedent under his father's will, giving power of appointment, was being administered in a state equity court, and that a decision in favor of a gift under the will in question would necessarily involve termination of the. trust created by the father's will. In reaching this result, Judge Soper stated, 31 F.2d at page 472:

"The case primarily concerns the construction of the will of the son, so as to determine whether the gift therein bestowed upon the complainant is valid. It is true that a decision in favor of the validity of the gift would necessarily involve the termination of the trust created for the benefit of the son by the father's will, and the trustees would be required to deliver the trust property to the complainant; but this incidental result, important though it may be, does not deprive the complainant of the right to apply to the federal court for an adjudication of the controversy."

The most recent decision of the Supreme Court on this point reaffirms this view. In Markham v. Allen, 326 U.S. 490, 66 S.Ct. 296, 90 L.Ed. 256, an action was brought by the Alien Property Custodian for a judgment declaring his right to share in the estate of a decedent, which estate was in the course of probate administration in the Superior Court of California. In holding that the federal court had jurisdiction of the subject matter of this action, the Supreme Court, per Stone, Ch. J., said, 326 U.S. at page 494, 66 S.Ct. at page 298, 90 L.Ed. 256:

" * * * while a federal court may not exercise its jurisdiction to disturb or affect the possession of property in the custody of a state court * * * it may exercise its jurisdiction to adjudicate rights in such property where the final judgment does not undertake to interfere with the state court's possession save to the extent that the state court is bound by the judgment to recognize the right adjudicated by the federal court."

The fact that complainant prays for incidental relief which the federal court is without jurisdiction to grant does not prevent an adjudication by the federal court of the rights of the respective parties in an estate. In Markham v. Allen, supra, the Court said, 326 U.S. at page 495, 66 S.Ct. at page 298:

"Although in this case petitioner sought a judgment in the district court ordering defendant executor to pay over the entire net estate to the petitioner upon an allowance of the executor's final account, the judgment declared only that petitioner [was entitled to the net estate]. The effect of the judgment was to leave undisturbed the orderly administration of decedent's estate in the state probate court and to decree petitioner's right in the property to be distributed after its administration. This * * * is not an exercise of probate jurisdiction or an interference with property in the possession or custody of a state court."

Thus, in the instant case, the fact that appellant requests the federal court to declare that Charles C. Carlin, Sr., died intestate (which the federal court cannot do) does not deprive the court of jurisdiction over the subject-matter.

For other authorities dealing with the line of demarcation (often difficult to draw) between the jurisdiction of State and federal courts in probate and testamentary matters, see, Sutton v. English, 246 U.S. 199, 38 S.Ct. 254, 62 L.Ed. 664; Farrell v. O'Brien, 199 U.S. 89, 25 S.Ct. 727, 50 L.Ed. 101; Gaines v. Fuentes, 92 U.S. 10, 23 L.Ed. 524; In re Broderick's Will, 21 Wall. 503, 22 L.Ed. 599; Miami County National Bank v. Bancroft, 10 Cir., 121 F.2d 921; Strickland v. Peters, 5 Cir., 120 F.2d 53; Chase National Bank v. Sayles, 1 Cir., 11 F.2d 948, 48 A.L.R. 207; Vanderwater v. City National Bank of Kankakee, D.C., 28 F.Supp. 89; O'Brien v. Markham, D.C., 17 F.Supp. 633. See, also, Glenn on Liquidation, § 142; Moore, "Federal Practice", Vol. 1, page 211, Vol. 3, pages 3481–3482; Woerner, "Probate Jurisdiction of Federal Courts"; 4 St. Louis

L.R. 69. And, see notes in 43 Harvard L. R. 462; 23 Harv.L.R. 225; 10 Col.L.R. 166.

It is the contention of the appellants in the pending case that the federal court has jurisdiction of the subject matter because the Virginia probate court was without authority to pass upon the validity of the settlement agreement, and that separate proceedings in a court of general equity jurisdiction were required to achieve this end. The Virginia authorities defining the jurisdiction of the probate court amply support this contention.

In Kirby v. Kirby, 84 Va. 627, 5 S.E. 539, holding that the action of the probate court in appointing a receiver was *ultra vires* and void, the court stated that the jurisdiction of the probate court was confined to the single question of whether a paper admitted to probate was the last will and testament of the decedent, and could not be extended further. See also Lamberts v. Cooper, 29 Gratt. 61, 70 Va. 61; Coalter v. Bryan, 1 Gratt. 18, 42 Va. 18. Also in Tyson v. Scott, 116 Va. 243, at page 250, 81 S.E. 57, at page 60, the court said,

"* * * the whole subject of the probate of wills rests upon and is regulated by statute law, and that the courts, in admitting a will to probate are confined to the simple question whether the paper admitted to probate was the true last will and testament of the deceased, and cannot be extended further, for the jurisdiction of a court to probate is not to ascertain and enforce rights of property, but to establish, preserve, and perpetuate an important muniment of title."

In Gooch v. Suhor, 121 Va. 35, 92 S.E. 843, it was held that the court, in appointing an administrator of intestate's estate, was exercising its statutory probate jurisdiction, that the statute conferred no general equity jurisdiction, and that the probate court had no power to determine the validity of a widow's antenuptial agreement in lieu of dower.

Also, in Whittle v. Roper, 149 Va. 896, 141 S.E. 753, which was a proceeding to determine which of several holographic wills should be admitted to probate, it was held that it was no error for the probate court to admit two such wills containing inconsistent residuary clauses, since such inconsistency could and must be considered by a court of equity in a separate proceeding. See, also, Rickard v. Rickard, 134 Va. 485, 115 S.E. 369.

In Potts v. Flippen, 171 Va. 52, 197 S.E. 422, certiorari denied 305 U.S. 662, 59 S.Ct. 364, 83 L.Ed. 429, rehearing denied 306 U.S. 667, 59 S.Ct. 487, 83 L.Ed. 1062, after an exhaustive review of the pertinent authorities, the court said, at p. 59, 197 S.E. at page 425:

"* * * we deem it sufficient to say that for more than one hundred years it has been settled law in this State, that when a bill is filed under provisions of Code, section 5259 (Va.Ann. Code 64–81, 84, 85), the jurisdiction of the court is limited to try the single issue, *devisavit vel non,* and when that issue has been duly determined, the jurisdiction of the court in such suit is ended."

See also the opinion of Lewis, J., in Hartman v. Strickler, 82 Va. 225, 233. The statutes of Virginia expressly provide for the approval of compromises on behalf of infants and insane persons in suit to which they are parties. Va.Code Ann. 8–169. Pursuant to this section, separate proceedings in chancery were instituted to authorize the execution of the settlement agreement in this case on behalf of the incompetent appellee, Charles C. Carlin, Jr., and the infant appellee, Sara Perrine Carlin.

In Dickson v. Alexandria Hospital, Inc., 4 Cir., 177 F.2d 876, District Judge Barksdale, speaking for our Court, said:

"On this appeal, two minor questions are presented, one of them being the question of the jurisdiction of the district court. While it is true that federal courts have no jurisdiction to probate wills or administer estates, this is an action by a nonresident against residents of this State, to establish a claim to property not in the custody of the State court, and the jurisdictional amount being present, there is no doubt that the district court had jurisdiction,

notwithstanding the fact that the real question here presented is the construction of a will."

In view of the foregoing authorities, the following conclusions seem justified:

■ (1) The Virginia probate court has no jurisdiction to pass upon the validity of the trust and the settlement agreement, and separate proceedings in equity are necessary to obtain such a determination.

(2) The federal court has jurisdiction of the subject matter of this action and may, within the confines of the instant civil action, adjudicate the rights of the respective parties in the estate of Charles C. Carlin, Sr., but the federal court should refrain from ruling that the decedent died intestate, which is a purely probate matter.

After its execution and consummation, this settlement agreement was filed with the Corporation Court of the City of Alexandria, Virginia, exercising its jurisdiction as a Probate Court, and the parties cooperated to terminate the probate proceedings in accordance with their agreement. The estate of Charles C. Carlin, Sr., was in no manner affected by the settlement agreement, which covered only the apartment house in the District of Columbia and the Alexandria Gazette Corporation stock—property agreed at the time to be no part of the estate.

The probate court never passed upon or even mentioned in any of its orders either the alleged trust or the settlement agreement. The stock of appellee, Alexandria Gazette Corporation, was never included as an asset of the estate of the said Charles C. Carlin, Sr. Charles C. Carlin, Sr., left two paper-writings purporting to be his last Will and Testament, one dated August 16, 1892, and the other dated August 31, 1937. He also left a paper writing dated September 16, 1937, purporting to be a revocation of the will dated August 31, 1937. The first will left all property to Lillian B. Carlin, his wife, and the second left his property to his wife for life and divided what remained between his two sons, appellant Keith Carlin and appellee, Charles C. Carlin, Jr. Neither of these wills was probated and the said Charles C. Carlin's estate was administered as if he had died intestate. Appellants seek no relief under either of these wills and it is unnecessary for the federal court in any way to construe or pass upon them.

It would thus seem that the instant civil action in the federal court in no sense interferes with any property in the custody of the Probate Court; nor does it seek a review of, or an appeal from, any order of the Probate Court. It is merely an action *inter partes*, not one *in rem*, seeking to establish certain rights of the plaintiffs. Thus, as to subject matter, it falls within the jurisdiction of a federal court.

Realignment of the Parties.

This brings us to the final question in this case. If, as appellees claim, Charles C. Carlin, Jr., defendant below, is realigned as a plaintiff, this would defeat the jurisdiction of the federal court for lack of diversity of citizenship between the parties.

On this point, the District Judge stated in his opinion:

"When the Court attempts to realign the parties according to their interests a more serious question of diversity arises. When the Court asked Mr. John Barton Phillips regarding the interests of his clients, Alexandria Gazette Corporation and Charles C. Carlin, Jr., and what their attitude towards this litigation is, he informed the Court that they were not participating actively in the litigation nor asking any specific relief. He said his clients were now standing-by in a neutral position and that he was appearing merely to follow the litigation and determine what its effect on his clients and their interests might be. His statement made it clear to the Court that his clients could not be classified as active plaintiffs or defendants at this time. There is no specific evidence of any collusion or cooperation between the plaintiffs and Charles C. Carlin, Jr., but the fact is, perfectly apparent from all the evidence that Charles C. Carlin and Keith Carlin have a community of in-

terest in any effort to defeat the claim of Sara Perrine Carlin in 1200 shares of the stock of the Alexandria Gazette Corporation. Both Keith and Charles Carlin are or have been engaged in litigation opposing the claim of Sara Perrine Carlin to such stock.

If, however, Sara Perrine Carlin's claim to such stock should be defeated, and the stock returned to the estate of Charles C. Carlin, Sr., as prayed for by Keith Carlin in this action, there would then no doubt be bitter antagonism between Keith Carlin and Charles C. Carlin, Jr., as to the ownership of such stock and rights and remedies based on such ownership. The most active and determined opposition to the complaint in this case comes from Sara Perrine Carlin and her attorneys. Opposed to her claims there is an apparent community of interest between Keith and Charles Carlin which would warrant the Court's listing Charles C. Carlin, Jr., as a plaintiff, but beyond that opposition there is not only no community of interest but a direct antagonism between Charles and Keith Carlin.

"It is not necessary, however, for the Court to make a definite realignment in view of the conclusion reached on other grounds of this motion."

The present state of the law on the problem of realignment of parties is set forth in City of Indianapolis v. Chase National Bank, 314 U.S. 63, 69, 62 S.Ct. 15, 17, 86 L.Ed. 47:

"Though variously expressed in the decisions, the governing principles are clear. To sustain diversity jurisdiction there must exist an 'actual', Helm v. Zarecor, 222 U.S. 32, 36, 32 S.Ct. 10, 11, 56 L.Ed. 77, 'substantial', Niles Bement Pond Co. v. Iron Moulders Union, 254 U.S. 77, 81, 41 S.Ct. 39, 41, 65 L.Ed. 145, controversy between citizens of different states, all of whom on one side of the controversy are citizens of different states from all parties on the other side. Strawbridge v. Curtiss, 3 Cranch, 267, 2 L.Ed. 435. Diversity

jurisdiction cannot be conferred upon the federal courts by the parties' own determination of who are plaintiffs and who defendants. It is our duty, as it is that of the lower federal courts, to 'look beyond the pleadings, and arrange the parties according to their sides in the dispute'. City of Dawson v. Columbia Ave. Sav. Fund etc., Trust Co., 197 U.S. 178, 180, 25 S.Ct. 420, 421, 49 L.Ed. 713. * * * Whether the necessary 'collision of interests', Dawson v. Columbia Ave. etc., Trust Co., supra, 197 U.S. at page 181, 25 S.Ct. at page 421, 49 L.Ed. 713, exists, is therefore not to be determined by mechanical rules. It must be ascertained from the 'principal purpose of the suit', East Tennessee V. and G. R. v. Grayson, 119 U.S. 240, 244, 7 S.Ct. 190, 192, 30 L.Ed. 382, and the 'primary and controlling matter in dispute', Merchants Cotton Press Co. v. Insurance Co., 151 U.S. 368, 385, 14 S.Ct. 367, 373, 38 L.Ed. 195."

See, also, Williams, "Federal Practice," 174, 205; Dobie, "Federal Procedure," 211, 335; Moore, "Federal Practice," Vol. 2, p. 2136.

Appellant Keith Carlin claimed that the benefits he received under the settlement agreement, namely, the conveyance to him of a half interest in the District of Columbia apartment house, should remain undisturbed if the settlement agreement is set aside, because appellee Charles C. Carlin, Jr., has unclean hands and cannot benefit as a result of his own fraud. In other words, appellants pose the issue that they are entitled to one half of the stock of appellee Alexandria Gazette Corporation and, in addition thereto, are entitled to retain the property appellant Keith Carlin received under the settlement agreement.

If appellants are successful in this litigation and obtain, as they claim, one-half of the stock in the Alexandria Gazette Corporation, Charles C. Carlin, Jr., loses control of the newspaper. And, even if, under the outcome of this litigation, Charles C. Carlin, Jr., should be permitted to retain one-half of the stock of this Cor-

poration, 1250 shares, he would lose 50 shares of this stock, since he now holds 1300 shares.

The prayer for relief here also asks for the appointment of a receiver for the Alexandria Gazette Corporation and for an accounting by Charles C. Carlin, Jr., individually and as President of this Corporation, for all income received by him and by the Corporation from 1938 to date.

██ Our conclusion, then, is that, on the whole picture, Charles C. Carlin, Jr., was properly aligned as a party defendant. Accordingly, there exists the requisite diversity of citizenship to confer jurisdiction on the District Court.

Since the sole question before us is that of the jurisdiction of the District Court, we express no opinion as to the merits of the case or as to what steps may be necessary in that court, should the appellants · (plaintiffs below) be wholly or partially successful, to make its judgment effective. The judgment of the District Court, dismissing this civil action for lack of jurisdiction, is reversed, and the case is remanded to that court for further proceedings in accord with this opinion.

Reversed and remanded.