# Regina R. Sager

## V.

# W.T. Basham

Record No. 900644

March 1, 1991

Present: All the Justices

*Murray J. Janus (Annette M. Cutino; Bremner, Baber & Janus*, on brief), for appellant.
*Ivy P. Blue, Jr.*, for appellee.

JUSTICE STEPHENSON delivered the opinion of the Court.

The sole issue in this appeal is whether the evidence is sufficient to support a jury verdict, approved by the trial court, in favor of the plaintiff. More specifically, we must decide whether there is sufficient evidence of consideration to support a finding of a valid, enforceable contract.

W.T. Basham sued Regina R. Sager on a note, executed by Sager, purporting to indemnify Basham for any loss he might incur as surety on a certain bail bond. The trial court refused to strike Basham's evidence, both at the conclusion of Basham's case-in-chief and at the conclusion of all the evidence. Instead, the court submitted the case to the jury under traditional principles of contract law.[1] The jury returned a verdict in favor of Basham in the amount of $61,845. Thereupon, the trial court overruled Sager's motion to set aside the verdict and entered judgment on the verdict. Sager appeals.

By way of background, the evidence established that on April 11, 1987, Sager's son, Gary, was arrested on several felony charges. On that date, Gary, as principal, and Basham, as surety, executed a bail bond in the amount of $50,000, for Gary's appearance in court.

On April 13, 1987, Gary signed a "demand note," dated April 13, 1987, in the amount of $90,000, whereby Gary agreed to indemnify Basham for "any and all losses and expenses incurred as a result of the execution of [the bail bond]." On that date, Gary also paid Basham a fee for being surety on the bond. In his motion for judgment, Basham alleged that Sager executed the note on this date also.

---

[1] Basham contended at trial that the case was governed by the law of negotiable instruments. The trial court rejected this contention, and no cross-error was assigned to the ruling. Thus, the trial court's ruling became the law of the case.

As required by the bond, Gary appeared before the General District Court of Henrico County on April 14, 1987. The case, however, was continued to May 7, 1987. Gary failed to appear before the court on May 7, and the case was continued to May 20, 1987. Gary also failed to appear in court on May 20, and the court issued a capias for his arrest.

The following day, May 21, 1987, Basham applied for a bail piece which reads as follows:

I, the undersigned surety for the accused, desiring to be discharged from liability as surety on the recognizance described above, request a capias for the arrest and surrender of the accused.

| 5/21/87 | /s/ W.T. Basham |
|---------|-----------------|
| (DATE) | (SURETY) |

Thereupon, the clerk of the court issued a "surety's capias" on May 21, 1987, at 10:05 a.m., that reads as follows:

TO ANY AUTHORIZED OFFICER, SURETY OR SURETY'S AUTHORIZED AGENT:

YOU ARE HEREBY COMMANDED in the name of the Commonwealth forthwith to arrest the Accused, and to deliver him to the Sheriff or Jailor of the . . . [C]ounty [of Henrico].

The parties agreed, during oral argument before this Court, that if Sager signed the note before the bail piece was issued on May 21, 1987, there was consideration for her signing. The parties further agreed that if Sager signed subsequent to the issuance of the bail piece, there was no consideration and, therefore, no valid contract. We assume, without deciding, that May 21, 1987, is the date upon which the existence of consideration turns. Therefore, the pivotal issue is whether Sager signed the note before May 21.

Consideration is, in effect, the price bargained for and paid for a promise. It may be in the form of a benefit to the party promising or a detriment to the party to whom the promise is made. It matters not to what extent the promisor is benefited or how little the promisee may give for the promise. A very

slight advantage to the one party or a trifling inconvenience to the other is generally held sufficient to support the promise.

*Brewer* v. *Bank of Danville*, 202 Va. 807, 815, 120 S.E.2d 273, 279 (1961). When, however, a service has been rendered before a promise was made, the prior service is not a sufficient consideration to support the promise. *Davis* v. *Anderson*, 99 Va. 620, 39 S.E. 588 (1901); *Stoneburner & Richards* v. *Motley*, 95 Va. 784, 788, 30 S.E. 364, 365 (1898).

We must view the evidence and all reasonable inferences deducible therefrom in the light most favorable to Basham because he prevailed at trial. Basham's case-in-chief consisted of various documents and the testimony of Basham and a notary public, who was also a practicing attorney at law.

■ The note in question is dated April 13, 1987, and the notary certified that Sager "acknowledged" the note on that date. The notary testified, however, that the certification was incorrect "because [he] was at Duke Hospital in Durham [North Carolina] on that day." The notary further testified that he could not say when Sager actually signed the note.

Basham testified that Sager "did not sign [the note] on the date Gary signed it [April 13, 1987], but it was sometime after that. As to the particular date, I don't know." When pressed by his counsel to state a time period in which Sager signed the note, Basham stated that "[s]he signed it sometime in the month of May. I would say that is when it was."

Sager's witnesses were certain that Sager signed the note after May 21, 1987. David Gould testified that "after Gary had left," Basham asked Gould to speak with Sager about signing over some property to Basham. Gould did in fact speak with Sager and brought her to the lawyer's office where she signed the note. Gould testified that this "was a couple of months, at least, after Gary had left town."

Sager testified that she left Virginia for California on April 11, 1987. She returned to Virginia on April 25, 1987. Her testimony was corroborated by her daughter, whom she visited in California, and by a copy of her airline ticket.

Sager also testified that after Gary failed to appear in court on May 20, 1987, she received some telephone calls and inquiries from the police asking whether she knew of Gary's whereabouts.

At that point in time, Sager had not signed the note or made any promise to Basham. She stated, however, that "sometime in August," 1987, she went to the lawyer's office and signed the note.

 Unquestionably, Sager did not sign the note on April 13, 1987.[2] Nonetheless, in its letter opinion overruling Sager's motion to set aside the verdict, the trial court concluded that a jury issue had been presented because "[r]easonable men may differ as to whether R. Sager endorsed the note on April 13, 1987 to prevent her son's incarceration pending trial."

 We think the trial court erred in refusing to strike Basham's evidence and in submitting the case to the jury. It was Basham's burden to prove a valid and enforceable contract. An essential element of a contract is consideration. When Basham's evidence alone is viewed in the light most favorable to him, it fails, as a matter of law, to prove that Sager signed the note before May 21, 1987. The best that can be said is that Basham testified that Sager signed the note "sometime in the month of May." We find that no consideration for the contract is shown by the evidence.

Consequently, we will reverse the trial court's judgment and enter final judgment in favor of Sager.

*Reversed and final judgment.*

---

[2] Indeed, Basham conceded this point during oral argument before this Court.