# Doug C. Walker

## v.

# Clinton Arrington

Record No. 900965

April 19, 1991

Present: Stephenson, Russell, Whiting, Lacy, and Hassell, JJ., and Poff, Senior Justice

*Wyatt B. Durrette, Jr. (Mary Stewart Murphy; Durrette, Irvin, Lemons & Federson*, on brief), for appellant.
*Thomas W. Williams, Jr. (Thomas Stark, IV; James P. Baber; Emroch & Williamson*, on brief), for appellee.

JUSTICE STEPHENSON delivered the opinion of the Court.

The issue in this appeal is whether the trial court erred in holding that there was no consideration to support an alleged subsequent oral modification of a written lease.

Clinton Arrington (Landlord) brought an unlawful detainer action against Doug C. Walker (Tenant) to recover possession of a tract of land located in Powhatan County, containing 25 acres, more or less. In a bench trial, the trial court awarded a judgment in favor of Landlord, and Tenant appeals.

The subject property is part of a tract containing 50 acres, more or less, that Landlord purchased from Dr. James C. Harkrader. In their negotiations, Harkrader required Landlord to permit Tenant to continue possession of the 25-acre tract and to grant Tenant an option to purchase it. Harkrader and Tenant were long-time friends, having been classmates at the Virginia Military Institute.

On February 12, 1989, Landlord and Tenant entered into a written lease agreement for a term of three years, beginning March 1, 1989, and ending February 29, 1992. The lease provided for the payment of $3,000 rent, payable in annual installments of $1,000. The installments were due on the first day of each March during the term of the lease. The parties agreed, however, that the

first payment, originally due March 1, 1989, could be paid within six months of the due date.

The lease further provided that, if Landlord did not receive any rent installment by the fifth day of the month for which the installment was due, a 10% late fee would be charged. Additionally, if the installment was not received within 30 days of the due date, the lease would terminate.

The lease also granted Tenant the option to purchase the property during the term of the lease for $15,000. The parties agreed that the lease agreement could not be modified except by a writing.

The sale of the 50-acre tract from Harkrader to Landlord did not close until April 19, 1989. Because of the delay in closing, Landlord and Tenant discussed modifications to the original lease.

Tenant testified that the lease was modified to change the date of the first rental payment from March 1, 1989, to April 19, 1989, and to increase the option price for the property from $15,000 to $16,500. Tenant further testified that Landlord promised to have a new lease prepared reflecting those changes. Landlord testified, on the other hand, that the original lease never was modified.

Landlord did testify, however, that he "prepared a second lease" because he and Tenant "were going to change the sales price" and the date of the lease. Nevertheless, Landlord never presented the second lease to Tenant.

Landlord maintained that he and Tenant never modified the original lease because they never signed the subsequent writing. Cross-examination of Landlord on this issue revealed the following:

> Q. In fact, there was an agreement that the dates would change, and that the purchase price would change from $15,000 to $16,500, is that correct?
>
> A. No *written* agreement was ever made.

(Emphasis added.)

When Landlord was questioned further about this matter by the trial court, he gave the following answers:

> THE COURT: How did you draw the piece of paper up, then, if you don't have any agreement? I mean, how do you

draw a lease up in advance of any agreement? That's what I'm unclear about.

[LANDLORD]: I drew it up based on discussions which we had prior to closing the property on the 19th.

THE COURT: Trying to reduce the agreement to writing?

[LANDLORD]: I wanted something in writing. I don't do anything unless it's in writing.

THE COURT: But you tried to reduce your oral agreement to writing?

[LANDLORD]: I tried to. *I put it in the form that we both agree upon.*

THE COURT: Well, you both had agreed upon?

[LANDLORD]: That we could agree upon.

THE COURT: That you could agree upon?

[LANDLORD]: Yes, sir.

(Emphasis added.)

On October 21 or 22, 1989, Landlord informed Tenant that the first rent installment was past due and that Landlord was terminating the lease. Tenant and a third party testified that, at that time, Landlord specifically stated that the rent had been due on October 19, 1989. Landlord denied naming a specific due date.

On October 23, 1989, Tenant tendered $1,000 in cash to Landlord, but Landlord rejected the tender. On October 26, 1989, Tenant, through his attorney, mailed a check for the rent installment to Landlord. Landlord delivered the check to his attorney, who holds it in escrow.

At the conclusion of the evidence, Landlord's trial counsel argued that the lease could not be modified orally, and therefore, the lease automatically terminated six months from March 1, 1989. Tenant's trial counsel* argued that the parties orally modi-

---

* Tenant's counsel on appeal did not represent him at trial.

fied the lease to reflect the delayed closing date and, in turn, the delayed date for the beginning of the lease. Therefore, counsel asserted, Tenant timely tendered the rent payment.

At the conclusion of counsels' arguments, the trial court, while not deciding the question, indicated that there may have been an oral modification of the lease. The trial judge stated that "the only question is whether or not you can change [the lease] with a subsequent oral agreement." Accordingly, the court requested memoranda of law from counsel on that question.

Following receipt of the memoranda, the trial court issued a letter opinion in which it stated that a "written agreement may be orally altered by agreement." The court also stated that it thought that "there was discussion about modification of terms and there may have in fact been an agreement." The court held, however, that "even assuming an agreement, there was clearly no consideration for the extension." We do not agree.

> Consideration is, in effect, the price bargained for and paid for a promise. It may be in the form of a benefit to the party promising or a detriment to the party to whom the promise is made. It matters not to what extent the promisor is benefited or how little the promisee may give for the promise. A very slight advantage to the one party or a trifling inconvenience to the other is generally held sufficient to support the promise.

*Brewer* v. *Bank of Danville*, 202 Va. 807, 815, 120 S.E.2d 273, 279 (1961); *accord Sager* v. *Basham*, 241 Va. 227, 229-30, 401 S.E.2d 676, 677 (1991).

The uncontradicted evidence in the present case established, as a matter of law, consideration for the alleged modification. In consideration of Landlord's having the time of payment of the first rent installment to run from April 19, 1989 (the date Landlord took title), rather than from March 1, 1989 (the date stated in the lease agreement), Tenant agreed to an increase in the option price from $15,000 to $16,500.

We hold, therefore, that the trial court erred in ruling that there was no consideration to support the alleged oral modification of the written lease. Accordingly, we will reverse the trial court's judgment, and, because the trial court assumed, but did not decide, that the written lease had been modified, we will remand the

case for further proceedings consistent with the views expressed herein.

*Reversed and remanded.*