Cynthia M. LAW, Conservator of the Estates of Jonathan W. Law and Melissa Beth Law, infants, Plaintiff,

v.

Roger D. LAW, Individually and as Administrator of the Estate of Clayton G. Law, deceased, Defendant.

Civil Action No. 2:94cv412.

United States District Court,
E.D. Virginia,
Norfolk Division.

April 26, 1996.

Richard J. Conrod, Sr., Virginia Beach, VA, for Plaintiff.

Edward T. Caton, III, Virginia Beach, VA, for Defendant.

### OPINION AND ORDER

PRINCE, United States Magistrate Judge.

Long ago, on September 29, 1995, in a fit of micro-management, the Court entered an Order stating what the issues raised by the Second Amended Complaint were. They were stated as follows:

1) Under Virginia law, does a cause of action for breach of an oral contract exist between the plaintiff, who relinquished her statutory preference to be appointed as administratrix of her deceased husband's intestate estate, and the defendant, who for valuable consideration agreed to a) serve as administrator in her stead, b) personally pay all funeral expenses and debts of the estate, c) after all debts and expenses had been paid, to distribute all assets to decedent's minor children, when the father-in-law becomes administrator but does not distribute the assets according to the contract?

2) Under Virginia law, does plaintiff, who relinquished her statutory preference to be appointed administratrix of her deceased husband's intestate estate, have a cause of action for actual fraud against the defendant, based upon her allegations that

the defendant knowingly and intentionally asserted that her deceased husband did not have any life insurance at the time of his death, when in fact he knew the statement was false, thereby inducing plaintiff to rely on defendant's assertion and relinquish her rights?

3) Under Virginia law, does plaintiff, who relinquished her statutory preference to be appointed administratrix of her deceased husband's intestate estate, have a cause of action for actual fraud against the defendant, who plaintiff alleges knowingly and intentionally concealed the fact that he would make a creditor's claim against the decedent's estate, when in fact he knew that he would bring such a claim, and plaintiff was induced to relinquish her rights based upon her belief that defendant would not bring a claim?

Defendant's Brief in Support of Motion to Dismiss (Docket # 37) does not question the Court's statement of the issues, and Plaintiff's Response to Defendant's Motion to Dismiss (Docket # 43) embraces them; ("[t]his Honorable Court concisely identified the correct issues that are involved in the instant federal case in its opinion issued September 29, 1995." *Id.* 1.)

It appears to fit the pattern of this case to mention plaintiff's grounds for opposing the motion to dismiss before mentioning defendant's grounds for dismissal. Plaintiff states, (1) that the three claims are for a breach of contract and two fraudulent representations; (2) that "the issues involved concern a matter of law which occurred prior to [defendant] being appointed Administrator, and prior to any administration of the decedent's estate" (*Id.* 1); (3) and that the claims "do not involve any administration matters and ... arise from ... completely separate transactions and occurrences" (*Id.* 2). These statements by plaintiff of her claims need to be compared with the allegations in her second amended complaint (Docket # 35):

¶ 19. Defendant promised that he would personally pay decedent's funeral expenses and all of his legal debts, and as administrator of the estate he would distribute all estate assets to plaintiff. In return plain-tiff promised to forego her right to be named administrator.

¶ 25. Defendant had an opportunity on May 17, 1991, at the " 'Debts and Demands Hearing' for the estate" to perform his contractual duty.

¶ 26. Defendant "has in the past and continues to breach his contractual duty by withholding the estate from the heirs at law, the Minor Children [of plaintiff], by refusing to distribute the estate to the said beneficiaries."

¶ 27. "An important and central purpose of the contract between the Plaintiff and the Defendant was that the Defendant would act as Administrator of the Estate of Clayton G. Law."

¶ 28. "Defendant's past and continuing failure to distribute the estate is a failure to carry out his contractual duty."

¶ 29. "Defendant's failure to distribute the estate is so important and central to the contract that Defendant's failure to fulfill his contractual duty defeats the very purpose of the contract."

¶ 33. Defendant advised plaintiff that his son and her husband had no life insurance.

¶ 36. Defendant knew that decedent had a life insurance policy through his employer.

¶ 40. Plaintiff relied upon defendant's fraudulent representations and "sign[ed] an express written waiver [to become administrator of the estate in favor of defendant] in compliance with her duty under the contract."

¶ 42. When defendant made the fraudulent representations he never intended "to perform his duties under the contract [to distribute the estate to her]."

¶ 43. Defendant had a contractual duty to plaintiff "to fully disclose his alleged claim as a creditor [of] said estate."

¶ 49. Defendant breached the contract when he did not disclose that he was an estate creditor.

As these allegations make absolutely clear, plaintiff's claims involve the administration of an estate. Paragraphs 26 through 29 of the Second Amended Complaint, for instance, allege a claim against the defendant based on a

failure to administer the estate. The involvement of the administration of an estate in this suit will be discussed in detail in this Order.

Plaintiff prays for expectation or "benefit of the bargain" damages, consequential damages, incidental damages, punitive damages, an injunction that defendant "perform his duties pursuant to the contract," that is, to distribute the estate assets to her, and attorney's fees. In an earlier submission (Docket # 34, Exh. A), plaintiff: 1) listed benefit of the bargain damages of $76,602.61, plus interest from October 1, 1990; 2) itemized her consequential damages to include attorneys' fees, filing fee, air fares, gasoline, turnpike fees, car rental, lodging, food, and postal expenses totalling $11,086.52; 3) itemized her incidental damages to include attorney's fees, probate court expenses in Michigan, and rent totalling $30,962.00; and 4) "loss of opportunity to invest in real estate while interest rates were at their lowest in years," and "loss of opportunity to invest corpus of their [sic] estate when the rates were at their highest level in years."

Defendant's grounds for dismissing the second amended complaint are as follows: 1) plaintiff's "action is a domestic-probate dispute"[1] and thus this Court has no subject matter jurisdiction; 2) damages fall under the required amount ($50,000) for diversity jurisdiction; 3) failure to state a claim for which relief can be granted; and 4) the claims are time-barred.

### The Probate Exception to Diversity Jurisdiction

In *Ladd v. Tallman*, 59 F.2d 732 (4th Cir.1932), the Court stated:

It has been repeatedly held, and we know of no decision to the contrary, that federal courts may not take jurisdiction in cases involving the probate of a will or cases attempting to disturb the possession of an estate properly in the hands of a state probate court or involving the conclusiveness of judgments of state courts in such matters. [Citations omitted.] As

was said by Mr. Justice Day in *Waterman v. Canal–Louisiana Bank & Trust Co.*, [215 U.S. 33 (1909)]: 'For it is the result of the cases that, in so far as the probate administration of the estate is concerned in the payment of debts, and the settlement of the accounts by the executor or administrator, the jurisdiction of the probate court may not be interfered with.'

Applying that principle, the Fourth Circuit would not disturb the district court's refusal to review the detail of the settlements made by an executrix of an estate before the court vested with the authority to administer fiduciary accounts in West Virginia.

That principle, however, is not dispositive of the issue before this Court. In *Cottingham v. Hall*, 55 F.2d 664 (4th Cir.1932), a case cited in *Ladd v. Tallman, supra,* as one discussing the principle stated above, an action was filed by a widow and her children against Cottingham, the administrator of her husband's estate, and the guardian of the estates of the children. They claimed that Cottingham had failed to properly account for all of the assets that had come into his hands as administrator and guardian. Cottingham contested the jurisdiction of the federal court, asserting that his fiduciary acts had been approved by the state probate court, and that he had been discharged of further fiduciary responsibilities. Upholding maintenance of the action, the Court said:

Here the fiduciary claimed to have complied with the administration of his trust, and further claimed that nothing was due the plaintiffs. To settle this issue was in no way an administration of the estate. While a federal court has no power to take possession of the property held by a state court, or to take over the administration of an intestate estate, the court, acting in equity, does have power to enforce a trust as against a fiduciary and reward relief against him, *where, as here, the administration has been completed* and he has funds in his hands belonging to the distrib-

---

utees, for which he failed to account. (Emphasis added.) [2]

*Cottingham*, 55 F.2d at 665. *Cottingham* therefore illustrates the ability of federal courts to enforce the fiduciary duties of estate trustees without unlawfully infringing on the probate jurisdiction of the state courts.

Similarly, in *Oxley v. Sweetland*, 94 F.2d 33 (4th Cir.1937), suit was filed in federal court against various next of kin and the administratrix of a decedent's estate to determine the right of plaintiff, who claimed to be decedent's widow, to his personal property.[3] Citing to *Cottingham* as well as other cases, the Court stated:

> The fact of marriage is a necessary issue in this suit of plaintiff; but the purpose of the suit is, not to establish the marriage, but to determine the right to the property claimed as against adverse claims of the defendants. As such, it is one of which the federal courts have jurisdiction, diversity of citizenship and the jurisdictional amount being present.

*Id.* (Citations omitted). The Fourth Circuit therefore reaffirmed the jurisdiction of federal courts over suits that, while related to a probate dispute, do not actually involve the administration of an estate or other matters properly delegated to the state probate courts.

In *Foster v. Carlin*, 200 F.2d 943 (4th Cir.1952), a suit was filed in federal court relating to the estate of Charles C. Carlin, Sr. After Carlin's death, his son Charles C. Carlin, Jr. represented to his brother Keith that their father had created an *inter vivos* trust of certain stock in a corporation in favor of Charles Jr.'s daughter and had given as a gift his remaining stock in that corporation to him, Charles Jr. Acting on this representation, the brothers and their mother entered into a settlement agreement whereby 1) Keith relinquished any claim to the stock; 2) Charles, Jr. conveyed to Keith one-half interest in an apartment house; 3) both agreed to make payments to their mother in lieu of dower; and 4) the decedent's estate would be administered as though he died intestate. The probate court ordered that the decedent's estate would be administered as though he were intestate, even though the decedent died with two testamentary documents purporting to be his wills and one document revoking one of them. Subsequently, the property of the estate, except for the stock and the apartment house, was distributed. The suit sought to declare the trust and settlement agreement as the products of fraud. The suit also asked for a declaration that Charles C. Carlin, Sr. died intestate.

The complaint in *Foster* was dismissed by the district court on two grounds: 1) that Keith, a plaintiff, was domiciled in Virginia, thus destroying diversity of citizenship, and 2) that the court lacked subject matter jurisdiction because the relief sought probate jurisdiction beyond the lawful jurisdiction of federal courts. In reversing the judgment below and addressing the issue of whether there was subject matter jurisdiction, the Court of Appeals stated the following:

> The law is well settled that the federal courts have no jurisdiction over matters within the exclusive jurisdiction of state probate courts. However, as to matters which do not involve administration of an estate or the probate of a will, but which may be determined in a separate action *inter partes* in the courts of general jurisdiction of the state, the federal courts do have jurisdiction if the requisite diversity of jurisdiction exists.
>
> 'In each case the jurisdictional question can be decided by determining whether the action could be maintained in a state court of general jurisdiction in the state where the federal court sits.' ....

It would thus seem that the instant civil action in the federal court in no sense interferes with any property in the custody of the Probate Court; nor does it seek a review of, or an appeal from, any order of

---

2. The Cottingham Court interpreted the duty of the administrator of the estate to serve as trustee as separate and distinct from the administration of the estate itself.

3. *Ladd v. Tallman, supra, Cottingham v. Hall, supra,* and *Oxley v. Sweetland, supra,* were all decided by Judges Parker, Northcott and Soper. Judge Northcott wrote the first two, Judge Parker the last.

the Probate Court. It is merely an action *inter partes*, not one *in rem*, seeking to establish certain rights of the plaintiff. Thus, as to subject matter, it falls within the jurisdiction of a federal court.

*Id.*, at 947–948, 950. (Citations omitted).[4] *Foster* therefore continues the line of cases in which the Fourth Circuit has exercised jurisdiction over a case involving the rights of parties embroiled in a dispute over the administration of an estate without unlawfully usurping the jurisdiction of the state probate courts to adjudicate the actual administration of the estate.

*Cottingham* and its progeny clearly delineate the Fourth Circuit's articulation of the boundaries of federal jurisdiction in this area of law. Several district courts from this circuit have also addressed this issue, one of which noted: "[T]his court is somewhat mystified as to why neither party directed its attention to the fairly substantial body of case law in the Fourth Circuit bearing on the actual issues at hand[.]" *Sisson v. Campbell University, Inc.*, 688 F.Supp. 1064 (E.D.N.C. 1988).[5] The same mystification applies equally well in this case.

■ In conformity with the law as expressed in the cases just discussed, the Court will decide now if subject matter jurisdiction exists here. As the Fourth Circuit stated in *Foster*, it is difficult to draw "the line of demarcation ... between the jurisdiction of State and federal courts in probate and testamentary matters." *Id.* at 948. The task here is not made easier by the mishmash of allegations in the second amended complaint.

Although plaintiff has asserted a breach of contract claim and two fraudulent representation claims, she has sought damages only for the breach of contract.[6] Applying the principles discussed in the foregoing cases, it is an easy matter to say that this Court has jurisdiction to hear a case involving a contract dispute between these parties based on diversity of jurisdiction and assuming that the requisite jurisdictional amount is met. A problem arises, however, when the allegations of the second amended complaint are added to the mix.

■ Paring down the allegations to the nub, the alleged contract is as follows: Plaintiff's husband died intestate, survived by plaintiff and two minor children. She had the right to preference, pursuant to Virginia Code § 64.1–118, in qualifying as the administrator of his estate.[7] She waived her right

---

4. The *Foster* Court also addressed the issue of the effect of a request for a type of relief not available in federal court:

> The fact that complainant prays for incidental relief which the federal court is without jurisdiction to grant does not prevent an adjudication by the federal court of the rights of the respective parties in the estate.
> ... [T]he fact that appellant requests the federal court to declare Charles C. Carlin, Sr., died intestate (which the federal court cannot do) does not deprive the court of jurisdiction over the subject-matter.

*Foster*, 200 F.2d at 948. (citations omitted). In the instant case, plaintiff requests this Court to enforce specific performance of the contract by making the distribution of the estate to the plaintiff's children. Such a request would involve the administration of the estate, and consequently is beyond the jurisdiction of this Court. *See Ladd v. Tallman*, 59 F.2d 732 (4th Cir.1932).

5. In *Sisson*, decedent established an *inter vivos* trust in favor of a university under which she was to receive periodic payments until her death, when the corpus would pass to the university. The executrix of decedent's estate sued the university in federal court seeking various remedies, including damages for breach of the trust agree-

ment, and conversion of the trust and property belonging to the estate, an accounting, and declaration of a constructive trust. The university moved to dismiss for lack of subject matter jurisdiction. Citing *Foster v. Carlin, supra*, the court accepted jurisdiction, although questioning whether there was jurisdiction to grant all of the relief, e.g., an accounting to determine the corpus of the estate. ("[A]n accounting 'is a purely administrative matter over which federal courts have no jurisdiction.' ") *Sisson*, 688 F.Supp. at 1068, quoting from *Smith v. Smith*, 272 F.Supp. 397, at 400 (E.D.Va.1967).

6. The first prayer for relief, (A), seeks "benefit of the bargain damages," which are contract damages. The next three prayers, (B, C, and D), seek "breach of contract" damages. The next, (E), seeks specific performance of the contract. Prayer F seeks costs and expenses, and Prayer G seeks "other and further relief as the Court deems equitable and just."

7. It has come to light during the submissions by the parties that plaintiff and her husband had separated and had entered into a separation agreement by which plaintiff waived any right to any claim against her husband by way of dower

in favor of defendant, who promised in return that he would personally pay his son's funeral expenses and other legal debts, and·that he would qualify as administrator of the estate and pay over to her children all of the assets of the estate. Plaintiff further alleges that defendant fraudulently represented to her that her husband had no life insurance when he knew otherwise, and that he fraudulently failed to disclose to her his intent to make a claim against the estate for a debt owed by his son, her husband. Defendant has breached the contract by failing to distribute the assets to her children.[8]

It is clear that the intestate law of Virginia will devolve decedent's estate upon his two children, in light of plaintiff's relinquishment in the separation agreement of any claim to his estate. Therefore, the net gain to plaintiff's children from the alleged contract is the benefit of having defendant personally pay their father's funeral and other expenses. One of these expenses is also the basis for the allegation that defendant defrauded plaintiff by not disclosing that he would make a creditor's claim against the estate. Therefore, plaintiff's first claim of fraud adds nothing to the net value of the alleged contract. The existence of any life insurance held by the deceased, which forms the basis for plaintiff's second allegation of fraud, is not a factor in determining the contractual benefit to plaintiff's children. As long as the beneficiary of the insurance is the estate, the proceeds will devolve to the children's benefit. If the insurance provided for a named beneficiary, the proceeds would be paid to that beneficiary without passing through the estate. The issues for trial, therefore, are whether the alleged contract was made, and

if so, what funeral expenses and other debts existed at the time of decedent's death. A trial of these issues would have no impact on the administration of the probate estate, and therefore federal subject matter jurisdiction exists for the contract claim.[9] Both of plaintiff's claims of actual fraud are DISMISSED, because plaintiff was not damaged by the alleged fraudulent misrepresentations. *See Community Bank v. Wright*, 221 Va. 172, 267 S.E.2d 158 (1980) (holding that allegation of fraud in the abstract does not give rise to cause of action; it must be accompanied by allegation and proof of damage); *Vance v. Maytag Sales Corp.*, 159 Va. 373, 165 S.E. 393 (1932) (holding that in action for fraud where record failed to show that the plaintiff had proved any damages with reasonable certainty to justify any damages in his favor, plaintiff could not recover). Each of these claims is to some extent subsumed by plaintiff's contract claim, which is the sole remaining cause of action in this suit.

*Jurisdictional Amount*

As previously stated, the net benefit to the children from this alleged contract between their mother and grandfather, is the value of the funeral expenses and other debts of their father. The net estate, if any there would be, will, as a matter of law, pass to them without the benefit of the alleged contract. Stated differently, the only benefit of the alleged contract was the agreement by defendant that he would personally pay the "funeral expenses and all of [decedent's] legally obligated debts." Second Amended Complaint, ¶ 19. If these debts are not $50,000, or more, this court does not have jurisdiction for a more fundamental reason.[10] The value

---

or inheritance. Accordingly, she would no longer have a right to preference in appointment as administrator. While this separation agreement is not authenticated, plaintiff has conceded its existence and asserts that even though her consideration for the alleged contract with defendant was a waiver of her right to administer her husband's estate, that consideration is a good and valuable one because it was agreed upon through a mutual mistake of fact.

8. It appears that because plaintiff seeks to have defendant specifically perform the alleged contract that she waives her claims of fraud. They might be available to her as a ground for reci-

sion, but she seeks performance. Also, as previously noted, she seeks no relief except for breach of the contract.

9. Plaintiff's prayer that defendant specifically perform the contract by making the distribution of the estate to the children is beyond the jurisdiction of this court.

10. The claims for consequential, incidental, and punitive damages; and for costs, expenses, and attorney's fees, much less the claims for rent, travel, loss of interest, etc. are frivolous. They will therefore not be considered in determining whether the jurisdictional amount is met.

of the estate, with or without the added value of the alleged promise of defendant, is not considered for the purpose of determining jurisdictional amount, because if plaintiff prevails she will obtain a personal judgment against defendant for an amount not exceeding the funeral expenses and other debts plaintiff proves. Nothing this Court will do will affect the estate or its distribution.

### Failure of Consideration

There is another issue to be considered. Defendant asserts lack of consideration as a defense to the alleged contract. Paragraphs 19 and 20 of the Second Amended Complaint allege the promises made between the parties, the consideration given by plaintiff, and her performance. Defendant allegedly promised to personally pay the funeral expenses and debts of decedent and distribute all assets "received from the estate" to plaintiff. "In exchange, Plaintiff would forego her preference to be named administratrix of the said estate pursuant to Virginia Code Annotated § 64.1–118." *Id.* ¶ 19. "Plaintiff accepted Defendant's offer on or about January 19, 1990 and performed her contractual obligation by signing a written waiver to forego her preference to be named administratrix" of the estate. *Id.* ¶ 20.

Va.Code § 64.1–118 provides as follows:

**What clerk or court to appoint administrator of estate; who to be preferred.—** In the case of a person dying intestate the jurisdiction to hear and determine the right of administration of his estate shall be in the same court or before the same clerk who would have jurisdiction as to the probate of his will, if there were a will. Administration shall be granted to the distributees who apply therefor, preferring first the husband or wife and then such of the others entitled to distribution as the court or clerk shall see fit.

The separation agreement, dated July 21, 1989, attached to Brief in Support of Motion to Dismiss, provides in ¶ 9 as follows:

Wife does hereby ... renounce, quit-claim and release any and all rights, claims[,] demands, obligations by way of dower, inheritance, descent, distribution or otherwise which she has or may hereafter acquire against husband in any and all property, real or personal and/or mixed, known and/or hereafter acquired by husband.

Consideration is an essential element of any contract. *Wallinger v. Kelly*, 136 Va. 547, 117 S.E. 850 (1923). In *Sager v. Basham*, 241 Va. 227, 401 S.E.2d 676 (1991), an action brought on a promissory note, the Supreme Court of Virginia stated:

'Consideration is, in effect, the price bargained for and paid for a promise. It may be in the form of a benefit to the party promising or a detriment to the party to whom the promise is made. It matters not to what extent the promisor is benefited or how little the promisee may give for the promise. A very slight advantage to the one party or a trifling inconvenience to the other is generally held sufficient to support the promise.'

*Id.* 401 S.E.2d at 677. (quoting *Brewer v. Bank of Danville*, 202 Va. 807, 120 S.E.2d 273, 279 (1961)). A case of persuasive authority is *Hamilton v. Harper*, 185 W.Va. 51, 404 S.E.2d 540 (1991). In that case, an action was filed in a West Virginia circuit court seeking damages for the death of a husband and the injury of his wife in an automobile accident, allegedly caused by defendant Harper, the driver of the other vehicle. Also sued was defendant Burke, who, under West Virginia law, may also have been liable because of his alleged encouragement in Harper's alcohol impairment. Nationwide Mutual Insurance Company, which had issued a contract of automobile liability insurance to Burke, filed a diversity action in a federal court in West Virginia seeking a declaration that it owed no coverage to Burke as a result of the accident. Nationwide filed a motion for summary judgment in its federal action, and while the motion was pending offered to settle the cases with plaintiffs for one-half of its coverage conditioned upon agreed dismissals of each action. Plaintiff's attorney orally accepted the offer, and then confirmed it in writing, on the day that the federal court granted summary judgment to Nationwide. The attorney knew that summary judgment had been granted. Nationwide did not. Upon learning of the summary

judgment, Nationwide refused to settle, and plaintiffs filed a motion in their state action to enforce the settlement. The motion was granted, and Nationwide appealed. The West Virginia Supreme Court reversed, stating:

> It is axiomatic that a contract requires consideration to be enforceable. Since a settlement agreement is undoubtedly a contract, consideration is likewise a prerequisite to enforceability of such an agreement. Nationwide argues that the settlement agreement at issue cannot be enforced for failure of consideration. Failure of consideration 'means that something presumably of value moving from obligee to obligor was intended, but did not materialize.' 4B Michie's Jurisprudence, [Contracts, (1986)], at § 38. Failure of consideration is also said to exist whenever 'one who has either given or promised to give some performance fails without his fault to receive the agreed exchange for that performance.' *Id.*

*Id.,* 404 S.E.2d at 543. (Citations omitted.) The Court further stated:

> Once the federal court issued its ruling [granting summary judgment], Nationwide no longer stood to benefit from the previously-tendered settlement offer. Consequently, the resolution of the declaratory judgment action in Nationwide's favor made the offer which the [plaintiffs] accepted unenforceable for failure of consideration.

*Id.,* at 544. Therefore, although *Hamilton* is not controlling authority, it is a clear illustration of how failure of consideration can nullify a contract in this context.

In the case at bar, the only response that plaintiff makes to the defense of lack of consideration is that even if she had, herself, no right of preference in being appointed administratrix of the estate, she had the right because she was the natural guardian and next friend of her children at the time of their father's death, and they had the right. (Docket # 44, at 9.) Plaintiff cites *Cornwall v. Cornwall,* 160 Va. 183, 168 S.E. 439 (1933), a case holding that such a right existed in an adult child, whose mother may not have been married to decedent, the father of the child.

Because the child distributee in *Cornwall* was an adult, the case is not squarely on point in the instant case. *Id.* at 442. It is unclear whether this fact will have an impact on the case at bar, but in any case the Court declines to rule on this issue at this time.

### *Virginia Statute of Frauds*

 There is one final impediment to plaintiff's claim not raised by defendant, but raised *sua sponte* by the Court. It is the Virginia Statute of Frauds. Plaintiff alleges that the contract between herself and the defendant was oral. Second Amended Complaint, ¶ 9. Va.Code § 11–2 provides as follows:

> **When written evidence required to maintain action.**—Unless a promise, contract, agreement, representation, assurance, or ratification, or some memorandum or note thereof, is in writing and signed by the party to be charged or his agent, no action shall be brought in any of the following cases:
>
> . . . .
>
> 3. To charge a personal representative upon a promise to answer any debt or damages out of his own estate.
>
> 4. To charge any person upon a promise to answer for the debt, default, or misdoings of another.

It appears on the face of the pleadings, therefore, that the provisions of the Virginia Statute of Frauds apply to plaintiff's claim.

### *Order of the Court*

It is ORDERED that defendant's motion to dismiss for lack of subject matter jurisdiction be DENIED. As stated earlier in this Opinion, it is also ORDERED that plaintiff's claims of actual fraud be DISMISSED.

Continuing the distasteful micro-management of this case, it is ORDERED that plaintiff file on or before twenty (20) days after the date of this Order, an affidavit or affidavits and/or depositions in conformity with Federal Rule of Civil Procedure 56(e), setting forth: 1) the funeral expenses and all of the legally obligated debts of Clayton G. Law; and 2) evidence that the Virginia Statute of Frauds does not bar this action on the

alleged oral contract. Plaintiff shall file at the same time a memorandum of law in support of her argument that the jurisdictional amount is met and that the Statute of Frauds does not bar the action. Defendant may file a reply affidavit or affidavits and/or depositions and memorandum of law within twenty (20) days after service of plaintiff's affidavits and memorandum.

It also appears that defendant's argument that the alleged contract is unenforceable because of a lack of consideration may have merit. Like most other issues in the case, however, the argument has not been adequately presented. Accordingly, within twenty (20) days after the date of this Order defendant may file affidavits or other evidence in conformity with Fed.R.Civ.P. 56, establishing the authenticity and validity of the separation agreement, and plaintiff may file, within twenty (20) days after service by defendant, counter-affidavits or evidence conforming to Rule 56, in support of her claim that the contract is based upon adequate consideration. The memoranda of law to be filed as heretofore ordered shall include discussion of this issue.

Upon motion of defendant (Docket # 45) it is ORDERED that his Counterclaim be DISMISSED WITHOUT PREJUDICE.