In the Matter of LOUISE GIBBS, as Mother and Natural Guardian and as Conservator of the Property of Sharon L. Gibbs, an Adult Under a Disability, Petitioner, v STEPHEN BERGER, as Commissioner of the New York State Department of Social Services, et al., Respondents.

Third Department, November 10, 1977

*Mona R. Nedlik* for petitioner.

*Louis J. Lefkowitz, Attorney-General (Clifford A. Royael* and *Jean M. Coon* of counsel), for Stephen Berger, respondent.

*Thomas B. Oakes* for Peter Di Mitri, respondent.

MAHONEY, J. A resolution of the issues herein requires a brief recitation of factual background.

Sharon Gibbs was born and raised in Endicott, Broome County, New York, where she resided with her parents until age 23. At that point she left home and for a period of approximately five years resided in several western States. Each year she returned to New York to visit her family for varied lengths of time. In December, 1974, Sharon returned home with all her personal possessions with the apparent intention of remaining permanently. However, a young man persuaded her to return to California, the State of her last residence, with the prospect of an early marriage. She returned to California where for the first five months of 1975 she shared an apartment, paying her share of the rent. She obtained employment, purchased a new car and paid California income taxes for the year 1974. In April, 1975, she called her mother in Endicott to inform her that she was not going to marry and planned to return home "shortly thereafter". On May 19, 1975, she was involved in a serious one-car accident wherein she sustained a severe brain stem injury which rendered her comatose, a condition that presently persists. Sharon was hospitalized in California from May 19, 1975 until June 25, 1975 when her mother brought her to New York and admitted her to the Wilson Memorial Hospital. While hospitalized in California, Sharon was awarded Medical Assistance Benefits (Medi-Cal) for the months of May and June, 1975. California discontinued benefits as of June 30, 1975 on the ground that Sharon was no longer a resident of that State. This decision was challenged in California but was affirmed. Louise Gibbs, Sharon's mother, applied for New York Medicaid on July 1, 1975. The application was denied on September 8, 1975 on the ground that Sharon was a resident of California and ineligible for New York Medicaid. On appeal, after a fair hearing, the determination was affirmed on the grounds that Sharon "was a resident of California *at the time of her accident* and no evidence has been produced as to any intent to change such residence." (Emphasis supplied.) In addition, it was found that Sharon was ineligible for assistance as "a person temporarily within the state" because her mother transferred her to New York for the purpose of receiving medical assistance. This transferred article 78 proceeding was commenced by Louise Gibbs, as mother and natural guardian, and as conservator of the property of Sharon Gibbs, the mother having been appointed conservator

by the Broome County Court on August 6, 1975.[1]

Our review of respondents' determination must begin with an affirmance of the conclusion that Sharon, *"at the time of her accident"* (emphasis supplied), was a resident of California. With respect to this issue, appellate review is restricted to the question of whether the determination below is rational (CPLR 7803, subd 4; *Matter of Pell v Board of Educ.,* 34 NY2d 222, 231) and interference with such determination is always withheld in the absence of irrationality traceable to unsupportable proof or clear errors of law. No such reversible nexus is present here.

We turn now to the more troublesome problem of whether an individual, concededly incompetent, though not so declared judicially, may re-establish residency in New York, her domicile of origin, so as to be eligible for medical assistance under section 366 (subd 1, par [b]) of the Social Services Law.[2] This section provides that medical assistance shall be given to a person who "(b) is a resident of the state, or, while temporarily in the state, requires immediate medical care which is not otherwise available, provided that such person did not enter the state for the purpose of obtaining such medical care". Had Sharon not been rendered unable to form an intent and, further, because of the gravity of permanent physical injuries, decided to return to her parents' home in Endicott, New York, there to be hospitalized, we would have little difficulty in concluding that in so doing she would have established residency in this State for the purposes of Medicaid eligibility. In *Matter of Corr v Westchester County Dept. of Social Servs.* (33 NY2d 111), an 89-year-old petitioner who had resided in New York for the first 78 years of her life, returned to this State after a nine-year absence, with the purpose of being hospitalized near her daughter and other close relatives. The Court of Appeals, in determining that petitioner had acquired a New York residence for purposes of qualifying for medical assistance, premised its conclusion on petitioner's long connection with this State, the fact that she returned not only to be

---

1. No reason appears in the record why Sharon's mother was appointed conservator rather than a committee. While it is true that the appointment of a conservator normally requires a finding of residency (Mental Hygiene Law, § 77.01), respondents were not parties to the conservatorship proceedings and are not now collaterally estopped from raising the residency issue *(Greenthal & Co. v Lefkowitz,* 41 AD2d 818).

2. "Residence" for purposes of eligibility for New York Medicaid has been interpreted as "domicile" *(Matter of Ruiz v Lavine,* 49 AD2d 1, 4-5; cf. *Matter of Corr v Westchester County Dept. of Social Servs.,* 33 NY2d 111, 115-117).

hospitalized but to be near her family and the fact that she had no other abode other than the nursing home where she was confined. The court found that such objective criteria established the *bona fides* of her residence in New York (*id.,* p 117). In the case at bar, Sharon lived the first 23 years of her life in Endicott, New York, and while residing elsewhere during the next ensuing 5 years she always returned to New York. In fact, she came home to stay in December of 1974 and only returned to California to marry. In April, 1975 she called her mother and after informing her that she was not going to marry, advised that she would be home "shortly thereafter". Such "objective criteria" plus the additional fact that Sharon, in her condition, has no other present place of abode other than the hospital near her parents' home, would compel the conclusion that she had established residency in New York if, indeed, Sharon had formed the intent to return here. Since she could not, we now turn to the question of whether the requisite intent to choose a domicile (Restatement, Conflicts 2d §§ 15, 18; 17 NY Jur, Domicile and Residence, §§ 11-12, 20-26) may be formulated by one other than the individual for whose benefit residence is sought to be established.

The Court of Appeals in *Matter of First Trust & Deposit Co. v Goodrich* (3 NY2d 410) has held that the domicile of an infant may be changed by his natural guardian or order of the court, but found it unnecessary to determine if such were the case when an incompetent was involved (*id.,* p 415 [citing *Matter of Robitaille,* 78 Misc 108]). In *Robitaille,* a long time domiciliary of New York was rendered incompetent before he could carry out his intent to return to Canada upon retirement. A committee was appointed by a New York court and the incompetent was returned to Canada where he died five years later. The change of domicile was not authorized by any court. Surrogate's Court of New York County determined that the decedent was a domiciliary of Canada despite the fact that he could not have formulated an intent at the time his committee moved him to Canada. The Surrogate noted that "[t]he right of a guardian to remove his ward or of a committee to remove his charge * * * into a neighboring state of the Union, is hardly to be doubted at this late date [citations omitted] if it is done bona fide." (*id.,* pp 115, 117). While we are unable to share the Surrogate's confidence that a guardian's or a committee's right to change the domicile or residence of their ward or charge is without doubt, there being no

statutory or decisional authority finally settling the issue, we reach a like conclusion because, here, as in *Matter of Corr v Westchester County Dept. of Social Servs.* (33 NY2d 111, *supra)* and *Matter of Robitaille (supra),* the objective criteria of (1) a long prior relationship with New York establishing a lifetime of connection with this State, (2) the highly probable fact that Sharon will live out her life in New York, (3) the abandonment of California as a residence and the judicial confirmation of that fact, (4) the absence of any abode other than New York, and (5) the fact that her parents and relatives, who can provide the intangibles of love, affection and attention that might aid in her recovery, all reside in the area of this State where she is presently hospitalized, compel the conclusion that Sharon Gibbs should be determined to be a resident of New York within the meaning of section 366 (subd 1, par [b]) of the the Social Services Law. In reaching this conclusion, we do not indulge in the legal fiction that Sharon's mother, natural guardian and conservator was merely effectuating Sharon's intent to return to New York. Rather, we conclude that a conservator, who is a close and appropriate relative with natural instincts of acting in the best behalf of an incompetent, may, without court order, change the incompetent's domicile if done in good faith and in the best interests of the conservatee. That being the case, the length of Sharon's residence in New York is irrelevant *(Shapiro v Thompson,* 394 US 618).

The determination should be annulled, and the petition granted, with one bill of costs to petitioner against respondents.

SWEENEY, J. P., LARKIN, MIKOLL and HERLIHY, JJ., concur.

Determination annulled, and petition granted, with one bill of costs to petitioner against respondents.