12 F.3d 171
 Max Lee RISHELL, Curator of the person and estate of
Kathleen Lacey, an incapacitated person, Plaintiff-Appellant,
v.
JANE PHILLIPS EPISCOPAL MEMORIAL MEDICAL CENTER; Jane
Phillips Episcopal Hospital, Inc., doing business as
Oklahoma Medical Correction Services, formerly known as Jane
G. Phillips Memorial Hospital, Inc., Defendants-Appellees.
 No. 92-6326.
 United States Court of Appeals,
Tenth Circuit.
 Dec. 21, 1993.
 
 Larry Alan Tawwater, Lampkin, McCaffrey & Tawwater, Oklahoma City, OK (Ben T. Lampkin and Jo L. Slama, with him on the briefs), for plaintiff-appellant.
 Karen L. Callahan, Barkley, Rodolf & McCarthy, Tulsa, OK (Stephen J. Rodolf and Ann Makela Schneider, on the briefs), for defendants-appellees.
 Before LOGAN and MOORE, Circuit Judges, and BROWN*, Senior District Judge.
 JOHN P. MOORE, Circuit Judge.
 
 
 1
 This case was initiated by the personal representative of a person who, while hospitalized in the defendant institution, failed in an attempt to end her own life. As a consequence of injuries arising from her abortive suicide, the person, Ms. Lacey, now exists in a permanent vegetative state in an institution in Louisiana specially able to care for her. Imprisoned within her own body and deprived of mental capacity to make even the most insignificant decisions for herself, she appears trapped in an artificial time warp between Oklahoma, the state where she lived at the time of her injury, and Louisiana, her current and apparently permanent residence. Her appeal presents the question of whether the district court correctly determined because Ms. Lacey was incapable of forming an intent she is unable to change her domicile from Oklahoma to Louisiana, thus nullifying diversity jurisdiction in this case.[1] We think not, and reverse.
 
 
 2
 The operative facts are rather simple. After a period of treatment following her injury, Ms. Lacey was moved to a special facility in Louisiana which provides long-term care for persons with brain injuries. Both parties agree Ms. Lacey's injury has left her mentally incapacitated, unable to make decisions of any kind, and her condition is presently regarded as irreversible. Prior to the filing of this action, an interdiction proceeding was filed in Ms. Lacey's behalf in Louisiana, and plaintiff, her brother-in-law, was appointed curator of Ms. Lacey's person and her estate.[2]
 
 
 3
 Plaintiff brought this action seeking damages for defendant's alleged negligence. Defendant moved to dismiss on the ground Ms. Lacey remains a domiciliary of Oklahoma; therefore, the parties are not diverse. Plaintiff asserted Ms. Lacey is a domiciliary of Louisiana because she is under the jurisdiction of the Louisiana court and because plaintiff, as curator, and Ms. Lacey's husband, as undercurator, intended Louisiana to be her permanent home. After consideration of the arguments, the district court agreed with defendant, holding Ms. Lacey could not have changed her domicile because of her inability to form intent.
 
 
 4
 Following entry of the order of dismissal, plaintiff turned to the court in Louisiana having jurisdiction over Ms. Lacey's interdiction. Apparently at plaintiff's request, that court entered an order stating, in part, Ms. Lacey was a domiciliary of Louisiana and had been for some time prior to the institution of the federal action.
 
 
 5
 Plaintiff then moved the district court for reconsideration, attaching a copy of the Louisiana court order, and asked the district court to recognize the recitations in that document. Believing the plaintiff was attempting to "scurry about, obtaining orders from state courts in an attempt to establish federal jurisdiction," the court refused to give cognizance to the Louisiana order. This appeal followed.
 
 
 6
 The conundrum presented to us is whether a personal representative appointed under court jurisdiction to act as the decision maker for a person who has lost forever the ability to make even the most insignificant decisions for herself must be barred from determining the location of the ward's domicile. Put another way, the question becomes whether the incompetent person is capable of achieving a change of domicile through the aegis of her personal representative.
 
 
 7
 The problem thus posited, we must immediately recognize diversity, as it affects jurisdiction, is a matter of federal and not state law. Kantor v. Wellesley Galleries, Ltd., 704 F.2d 1088, 1090 (9th Cir.1983); Stifel v. Hopkins, 477 F.2d 1116, 1120 (6th Cir.1973); Ziady v. Curley, 396 F.2d 873, 874 (4th Cir.1968); Wilson By and Through Wilson v. Kimble, 573 F.Supp. 501, 503 (D.Colo.1983). Thus, the ultimate determination in this case must be made under the guidance of federal principles. Even though federal principles will dictate the outcome, however, we can utilize state law as an aid to reaching the proper decision. Rodriguez-Diaz v. Sierra-Martinez, 853 F.2d 1027, 1030 (1st Cir.1988); Stifel, 477 F.2d at 1120. That decision is a mixed question of law and fact reviewed under a clearly erroneous standard. Crowley v. Glaze, 710 F.2d 676, 678 (10th Cir.1983).
 
 
 8
 The linchpin for the district court's judgment is Coppedge v. Clinton, 72 F.2d 531, 533 (10th Cir.1934), a case in which we unequivocally held an incompetent person presumptively lacks the capacity to change domicile. Indeed, that is a principle so well grounded in federal common law that it may be regarded as an aphorism. Nonetheless, the rule is not immutable.
 
 
 9
 Looking behind the principle, one perceives two points. First, the presumption of inability to form an intent is rebuttable. Id. Second, the principle rests upon the notion the incompetent person's right to declare domicile must be suspended until reason returns to avoid legal consequences that may later harm the person's best interest. See 13B Charles A. Wright et al., Federal Practice and Procedure Sec. 3616 (2d ed. 1984). As corollary to the general principle, we conclude when an incompetent person will never regain reason, preserving the person's right to determine domicile in the future is but a fiction.
 
 
 10
 State courts have proceeded according to this corollary. They have allowed legal representatives of incompetent persons to change the domiciles of their wards for diverse beneficial purposes, but usually only under court direction or because of a family relationship between the representative and the ward. See Hayward v. Hayward, 65 Ind.App. 440, 115 N.E. 966, 973 (1917) (guardian may proceed only under court order to change an insane ward's domicile because change would alter distribution of ward's estate); Gibbs v. Berger, 59 A.D.2d 282, 399 N.Y.S.2d 304, 307 (1977) (conservator "who is a close and appropriate relative with natural instincts of acting in the best behalf of an incompetent" can change incompetent's domicile without court order if done in good faith and in the incompetent's best interest); In re Gray's Estate, 119 Okl. 219, 250 P. 422, 423 (1926) (guardian can move ward's residence out of state only with court's permission); Estate of Freeman v. Department of Revenue, 11 Or.Tax. 219, 223, 1989 WL 23045 (Or.T.C.1989) (in Oregon, guardian can change adult ward's domicile directly by court order or under court order explicitly authorizing guardian to change domicile).
 
 
 11
 Another state court held the domicile of an incompetent person changed by operation of law when her brother had moved her from New York to New Jersey to receive custodial care. In re Estate of Gillmore, 101 N.J.Super. 77, 243 A.2d 263, 270 (App.Div.), cert. denied, 52 N.J. 175, 244 A.2d 304 (1968). The court found for practical purposes the incompetent person resided permanently in New Jersey; maintained no other residence; had severed ties with her former home; and came to New Jersey to spend the remainder of her life. These "unique" circumstances led the court to conclude a change in domicile had been effected. Moreover, the court held additionally, as her duly qualified personal representative acting in good faith, the brother had legal capacity to effect a change in her domicile. Id. See also In re Kassler, 173 Misc. 856, 19 N.Y.S.2d 266, 269 (Sup.Ct.1940) (recognizing a change in domicile based on the principle a guardian of an incompetent person "acting in good faith" has the right to permanently change the ward's domicile to another jurisdiction unless the court having control over the ward objects). Unless an appointing court holds to the contrary, the guardian of an incompetent person will usually have the authority to shift the location of the incompetent's domicile if the change serves the ward's best interests. Restatement (Second) of Conflict of Law Sec. 23 cmt. f (1988). Finally, to resolve an objection to diversity jurisdiction, the District Court for the Southern District of New York has recognized the ability of a personal representative to change the domicile of an incompetent ward and denied dismissal. Love v. Roosevelt Hospital, No. 92 Civ. 4211 (JSM), 1993 WL 190345 (S.D.N.Y. June 2, 1993).
 
 
 12
 In each of these cases, faced with the question of the domicile of an incompetent person, the court acted to achieve the best interest of that person.[3] In each instance, state law governs whether the substituted intent of the ward is to be executed under the limited and controlled authority of a personal representative or by operation of law. Yet, the common principle is to permit another person to make a decision for the incompetent whose best interests are at stake.
 
 
 13
 If the best evidence available shows the incompetent likely will never be restored to reason, the law must allow another, vested with legal authority, to determine domicile for the best interests of that person. To prohibit such determinations is to leave the incompetent in a never-ending limbo where the presumption against changing domicile becomes more important than the interests of the person the presumption was designed to protect.
 
 
 14
 This case presents a situation ripe for consideration of that principle. Plaintiff alleges Ms. Lacey's present condition is permanent, which defendant apparently concedes. It is the expressed intent of both her husband and brother-in-law that Ms. Lacey's current hospitalization be permanent and that Ms. Lacey remain in Louisiana so she may obtain benefits from that state. Nothing in the record suggests Ms. Lacey will ever return to Oklahoma, nor has defendant produced any evidence implying Ms. Lacey was moved to Louisiana simply to create diversity of citizenship.
 
 
 15
 We believe, therefore, the district court plainly erred by acting too hastily in rejecting plaintiff's claim of changed domicile. Unfortunately, the court, apparently believing the Coppedge presumption is inflexible, gave no consideration to whether it could be rebutted in this case. Because Ms. Lacey likely will remain institutionalized for the rest of her life, consideration must be given to plaintiff's capacity to change her domicile for her own best interests. At this juncture, however, such a judgment is premature.
 
 
 16
 The district court must permit a full development of all the facts before making a determination of jurisdiction.[4] Most critical to the paradigm we have posed is the best interest of Ms. Lacey. Additionally, because the issue was not presented to us, the district court should determine whether her domicile was changed by operation of the Louisiana code.[5] Thereafter armed with all the facts, appropriate state law, and the principles we have articulated here, the district court will be able to make an informed determination of whether diversity exists. Accordingly, the judgment of the district court is REVERSEDnd the cause REMANDED for further proceedings.
 
 
 
 *
 Honorable Wesley E. Brown, Senior District Judge for the District of Kansas, sitting by designation
 
 
 [1]
 For diversity purposes, the domicile of a legal representative is that of the ward. 28 U.S.C. Sec. 1332(c)(2)
 
 
 [2]
 An interdiction is a proceeding akin to guardianship or conservation
 
 
 [3]
 Other courts have concluded the best interests of the incompetent required domicile to remain unchanged until the person was restored to reason. See In re Webber's Will, 187 Misc. 674, 64 N.Y.S.2d 281, 285 (Sup.Ct.1946) (change of domicile affects so many civil and property rights that a personal representative of an incompetent should not be able to change domicile)
 
 
 [4]
 In fairness to the district court, we must note counsel did not completely frame the issues in the first instance. Indeed, it has fallen upon us to sort out the factors which must govern here
 
 
 [5]
 A curious dichotomy exists because from the documents in our record it is not clear why the Louisiana court concluded Ms. Lacey is domiciled in Louisiana. Under Louisiana law, once an interdiction has been commenced and a curator appointed for an adult interdict, the domicile of the interdict is effected by operation of law. See La.Civ.Code Ann. art. 39 (West 1993) ("[A] person of full age, under interdiction, has his domicile with his curator."). While the apparently automatic effect of this provision negates the district court's concern plaintiff was attempting to create federal jurisdiction when none existed, it poses a curiosity because plaintiff is a domiciliary of the State of Missouri. The curiosity exists because for the purpose of diversity "the legal representative of ... an incompetent shall be deemed to be a citizen only of the same State as the ... incompetent." 28 U.S.C. Sec. 1332(c)(2). Therefore, a conflict arises over which is the correct state of domicile for the purpose of federal diversity jurisdiction. The conflict, however, is only academic here. Whether Ms. Lacey is a domiciliary of Missouri because that is her curator's domicile, or plaintiff is a domiciliary of Louisiana because that is the domicile of his ward, is insignificant because there is diversity in either case