**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

FREDDY M. LONG, Guardian of the
Estate of and person of Gilbert
Venoy Long,
<u>Plaintiff-Appellant,</u>

v.

No. 95-2947

CHARLES G. SASSER, M.D.;
J. WILSON, III, M.D.,
<u>Defendants-Appellees.</u>

Appeal from the United States District Court
for the District of South Carolina, at Florence.
Cameron McGowan Currie, District Judge.
(CA-94-2342-4-22)

Argued: June 5, 1996

Decided: August 2, 1996

Before WILKINSON, Chief Judge, MICHAEL, Circuit Judge, and
MACKENZIE, Senior United States District Judge for the Eastern
District of Virginia, sitting by designation.

_____

Affirmed by published opinion. Chief Judge Wilkinson wrote the
opinion, in which Judge Michael and Senior Judge MacKenzie joined.

_____

**COUNSEL**

**ARGUED:** Thomas Phillip Mains, Jr., MAINS & MAINS, L.C.,
Alexandria, Virginia, for Appellant. Steven Wayne Ouzts, TURNER,

PADGET, GRAHAM & LANEY, P.A., Columbia, South Carolina, for Appellees.

_____

**OPINION**

WILKINSON, Chief Judge:

Appellant Freddy M. Long brought this medical malpractice case on behalf of his ward, Gilbert Venoy Long, alleging federal jurisdiction based on diversity of citizenship. After Gilbert Long suffered a serious stroke, Freddy Long moved him to a nursing home in Virginia. Finding that the stroke rendered Gilbert Long incapable of possessing the intent to establish a new domicile in Virginia, the district court held that Long retained his previous South Carolina citizenship. As both Gilbert Long and the defendant physicians were citizens of South Carolina, the district court dismissed the case for lack of subject matter jurisdiction. We now affirm.

I.

On March 6, 1992, when a citizen and resident of South Carolina, Gilbert Venoy Long arrived at the emergency room of Conway Hospital complaining of weakness in his right side. Long was admitted to the hospital and then suffered a stroke while in the care of appellees, Dr. Charles G. Sasser and Dr. J. Wilson, III.

Long's family had him transferred first to Duke University Medical Center and then to HealthSouth Rehabilitation Center in Florence, South Carolina. Upon Long's discharge from HealthSouth, appellant, a Virginia resident, moved him to a nursing home in Virginia.

Freddy Long filed suit in South Carolina federal court on behalf of his ward. He alleged appellees committed medical malpractice in the treatment of Gilbert Long while he was at Conway Hospital. Freddy Long asserted federal jurisdiction based on diversity of citizenship. He alleged that he and his ward were both residents of and domiciled in Virginia. The parties agreed that Dr. Sasser and Dr. Wilson were citizens of South Carolina.

In July 1995, the two physicians filed a motion to dismiss alleging a lack of diversity. On September 12, 1995, the district court dismissed the case for lack of subject matter jurisdiction, finding that Gilbert Long had never changed his original South Carolina domicile and that the parties therefore were all citizens of South Carolina for diversity purposes.

II.

Appellant contends that the district court erred in concluding that Gilbert Long was domiciled in South Carolina, asserting that Long had the capacity to form, and did in fact form, the intent to establish a Virginia domicile. We believe, however, that the record clearly supports the district court's finding that Gilbert Long lacked the requisite mental capacity to change his domicile. We further conclude that the need for clear jurisdictional rules and the absence of traditional diversity concerns in this sort of case all support affirmance.

A.

The question of citizenship for purposes of diversity jurisdiction is ultimately one of federal law, Ziady v. Curley , 396 F.2d 873, 874 (4th Cir. 1968), although federal courts may consult state law in making a decision, Rodriguez-Diaz v. Sierra-Martinez , 853 F.2d 1027, 1030 (1st Cir. 1988). As the legal representative of Gilbert Long, Freddy Long shared the citizenship of his ward for the purpose of determining the existence of diversity. 28 U.S.C. § 1332(c)(2). It is readily apparent that Gilbert Long was a citizen of South Carolina for the purpose of establishing diversity jurisdiction. That conclusion is compelled by Foster v. Carlin, 200 F.2d 943 (4th Cir. 1952), where we held that:

> One who has been adjudged incompetent may change his domicile if, but only if, he has, since the adjudication of incompetency, acquired sufficient understanding and mental capacity to make an intelligent choice of domicile. After such adjudication, the burden of proving the subsequent acquisition of sufficient mental capacity is plainly on him who alleges it.

3

Id. at 946 (citing Coppedge v. Clinton , 72 F.2d 531 (10th Cir. 1934) and McCampbell v. McCampbell, 13 F. Supp. 847 (W.D. Ky. 1936)).

It is uncontested that, prior to his stroke, Gilbert Long was domiciled in South Carolina. In addition, the record amply supports the district court's conclusion that Gilbert Long lacked the capacity to form any intent to establish a new domicile in Virginia. Dr. Sobhany, Gilbert Long's physician, stated in an affidavit that Long's stroke left him "completely mentally and physically incapacitated and unable to understand or conduct his affairs." This assessment was corroborated by the testimony of Gilbert Long's wife and children and a personal friend. Even if Gilbert Long retained some capacity for comprehension, his son John testified that his father did not participate at all in the decision to move him to Virginia. Accordingly, because Gilbert Long was incapable of changing his domicile, his domicile remained in South Carolina, Anderson v. Watt, 138 U.S. 694, 706 (1891), and he remained a citizen of South Carolina for diversity purposes, Gilbert v. David, 235 U.S. 561, 568-69 (1915).

All parties being citizens of South Carolina, the district court properly dismissed the complaint for lack of jurisdiction.

B.

Appellant urges us to abandon the rule of Foster v. Carlin and adopt the approach of the Tenth Circuit in Rishell v. Jane Phillips Episcopal Memorial Medical Center, 12 F.3d 171 (10th Cir. 1993). Rishell permits a guardian acting in the best interests of a permanently incompetent ward to change the domicile of that ward:

> If the best evidence available shows the incompetent likely will never be restored to reason, the law must allow another, vested with legal authority, to determine domicile for the best interests of that person. To prohibit such determinations is to leave the incompetent in a never-ending limbo where the presumption against changing domicile becomes more important than the interests of the person the presumption was designed to protect.

Id. at 174.

4

We are not inclined to disturb the rule of <u>Foster</u>. Jurisdictional rules should above all be clear. They are meant to guide parties to their proper forums with a minimum of fuss. While close cases may arise under <u>Foster</u> regarding whether the ward possessed the necessary capacity to effect a change of domicile, <u>Rishell</u> requires a more speculative inquiry as to whether the ward will remain incompetent in the future, as well as inviting litigation over the "best interests" of the ward. <u>See Rishell</u>, 12 F.3d at 174 ("Most critical to the paradigm we have posed is the best interest of [the incompetent ward].").

Inquiring whether the "best interests" of the ward are served by a guardian's attempt to effect a change in domicile to secure a federal forum strikes us as singularly unproductive. We note, for example, that this case does not raise the primary concern addressed by diversity jurisdiction -- fear of local bias against litigants from out of state. This is essentially a local dispute; Gilbert Long was a resident of South Carolina for many years prior to his stroke, and the doctors who treated him were South Carolina doctors. We see no reason to believe that this case will not receive a fair hearing before a South Carolina court.*

III.

For the foregoing reasons, we affirm the judgment of the district court.

<u>AFFIRMED</u>

_____

*The district court specifically found that the South Carolina statute of limitations for medical malpractice claims would not prevent appellant from bringing the case in state court. Defendants stipulated that the statute of limitations had been tolled due to Gilbert Long's incompetency, providing Freddy Long with ample time to refile the action in the South Carolina Court of Common Pleas.

5