# In the

# United States Court of Appeals

## For the Seventh Circuit

No. 02-1563

JAMES DAKURAS, SR.,

*Plaintiff-Appellant,*

v.

ROBERT EDWARDS, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 00 C 4890—**Joan B. Gottschall**, *Judge.*

SUBMITTED OCTOBER 16, 2002—DECIDED NOVEMBER 14, 2002

Before BAUER, POSNER, and DIANE P. WOOD, *Circuit Judges.*

POSNER, *Circuit Judge.* The district court dismissed this diversity fraud suit on the ground that the key defendant was a citizen of the same state as the plaintiff, namely Illinois. According to allegations of the complaint that for purposes of this appeal we are required to treat as true, repressing our natural skepticism, the plaintiff, James Dakuras, and a defendant, Ella Calder, who was rightly deemed an indispensable party by the district judge, lived together in Illinois in a simulacrum of marriage. After Calder had a stroke, her relatives, who are Ohioans (and who are the other defendants in the case), deceived her into moving to Ohio, where they had her declared incompe-

tent. They placed her in an assisted-living facility there and are preventing Dakuras from having any contact with her. When they removed her from Illinois to Ohio they took valuable property owned by Dakuras and they refuse to return it.

The district court pounced on Dakuras's claim that Calder had been deceived into relocating to Ohio, and concluded that he had pleaded himself out of federal court. Citizenship for purposes of the diversity jurisdiction is domicile, and domicile is the place one intends to remain, so involuntary removal does not change one's domicile, as we had occasion to note just recently with respect to prisoners. *Bontkowski v. Smith*, 305 F.3d 757 (7th Cir. 2002). Had Calder been domiciled in Illinois but imprisoned in Ohio, she would be a citizen of Illinois (unless she had decided she didn't want to go back to Illinois when she was released), not of Ohio; and the judge reasoned that if she was lured to Ohio this is the same as her having been forcibly removed there. No doubt it would be the same thing, though we can't find any cases on the point, if that were all there was to the matter. But the defendants concede and indeed emphasize that Calder is incompetent; it is they, as her guardians, who have decided that she shall remain in Ohio; and so we must decide whether a guardian, unlike the criminal justice system, can change a ward's domicile, an issue on which other courts are divided—compare *Rishell v. Jane Phillips Episcopal Memorial Medical Center*, 12 F.3d 171, 174 (10th Cir. 1993), which answers "yes," with *Foster v. Carlin*, 200 F.2d 943, 946 (4th Cir. 1952); *Long v. Sasser*, 91 F.3d 645, 647 (4th Cir. 1996); and *Juvelis by Juvelis v. Snyder*, 68 F.3d 648, 655-56 (3d Cir. 1995), which answer "no" (though *Juvelis* also, and inconsistently, cites *Rishell* with apparent approval, *id.* at 655)—and to which we have not spoken.

We think the better view is that a guardian can change his or her ward's domicile, in just the same way that a parent (or, for that matter, a guardian) can change a child's domicile—though there is a division of authority on that question too, with *Ziady v. Curley*, 396 F.2d 873, 875 (4th Cir. 1968), and *In re Hall's Guardianship*, 71 S.E.2d 140, 144 (N.C. 1952), holding that the parent can change the child's domicile, and *Dunlap by Wells v. Buchanan*, 741 F.2d 165, 167-69 (8th Cir. 1984), implying that he cannot. A prisoner forcibly removed from the state where he has been living and wants to continue to live and to which he intends to return when he is released from prison has no significant contact with or commitment to the state of his imprisonment, a strictly transient and undesired abode. It is different with a person who, whether because of youth or incompetency, is not able to make a responsible determination of where to live. The responsibility for making the essential life choices of children and wards is vested not in them but in their parents or guardians, and we cannot see why the choice of domicile should not be treated as one of those life choices. As the court pointedly remarked in the *Rishell* case, "To prohibit such determinations [determinations by guardians to change the domicile of their wards] is to leave the incompetent in a never-ending limbo where the presumption against changing domicile becomes more important than the interests of the person the presumption was designed to protect." 12 F.3d at 174. As this quotation brings out, domicile matters for other reasons besides jurisdiction. See, e.g., *DeSilva v. DiLeonardi*, 125 F.3d 1110 (7th Cir. 1997). Access to Medicaid treatment is a major one for an incompetent and institutionalized person. States have different rules on the matter, with different financial consequences. A conclusion that movement of an incompetent person cannot change that person's domicile would mean that for Medi-

caid purposes (we do not know whether she is a Medicaid recipient) Ella Calder remains a citizen of Illinois, whose benefit levels and rules would continue to govern and might require her to be institutionalized *in* Illinois!

We might reach a different conclusion concerning the defendants' power to change their ward's domicile if the sole or dominant reason for the change was to create federal jurisdiction—if Calder's relatives had spirited her out of Illinois for the purpose of being able to remove any state-court case brought by Dakuras to federal court. In such a case there would be grounds for doubt that they had actually changed her domicile. It is true that if a change in domicile is bona fide, in the sense that the individual really and truly intends to remain in his state of residence, the motive, even if it is to confer or thwart diversity jurisdiction, is irrelevant. *Peterson v. Allcity Ins. Co.*, 472 F.2d 71, 74 (2d Cir. 1972); *Janzen v. Goos*, 302 F.2d 421, 425 (8th Cir. 1962). But in the case of an incompetent, the decision is that of the guardian, and if it is taken for improper purposes there is no reason to respect it. Cf. 28 U.S.C. § 1359, which denies federal "jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court." The plaintiff charges improper purposes here. Although the defendants are not trying to confer federal jurisdiction, but to defeat it, they should not be allowed to gain a litigating advantage from having changed their ward's domicile for an improper reason. Stated differently but with the same consequence, they should be estopped to deny that they changed her domicile.

The judgment of dismissal is therefore reversed with directions to reinstate the suit.

REVERSED AND REMANDED.

No. 02-1563                                                    5

A true Copy:

      Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*
