**MIDWEST TRANSIT, INC., an Illinois corporation, Plaintiff–Appellee,**

v.

**Hal D. HICKS, Defendant–Appellant.**

No. 03–1227.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 1, 2003.

Decided Oct. 17, 2003.

Before KANNE, ROVNER, and
EVANS, Circuit Judges.

ORDER

Hal D. Hicks has lived a very active and colorful life, owning homes and large amounts of land in Illinois and Florida, running a business that gave him access to a private jet, and dating, marrying, and divorcing women in both states. While such a lifestyle was no doubt exciting for Hicks, it presents a federal court with a significant problem in determining his citizenship for diversity purposes. The district court determined that Hicks was a citizen of Illinois and dismissed this case for lack of diversity jurisdiction. Because we believe that the court did not properly consider Hicks's contacts with Florida and Illinois in relation to his statements of intent regarding his citizenship, we vacate and remand the case to the district court for further proceedings.

Background

Midwest is a closely-held Illinois corporation engaged in the business of trucking and hauling. Before Midwest became embroiled in this litigation, its sole shareholders were Hicks, Diane Witters, and C. Michael Witters. Hicks also served as president of the corporation. A stock-ownership dispute developed, and in January 2000 the Witterses filed suit individually and on behalf of Midwest against Hicks in Illinois state court (the "state action"), alleging that Hicks violated his fiduciary duties to the corporation and engaged in self-dealing. For reasons not apparent from the record, the state court entered an order of default against Hicks and appointed a receiver for Midwest pending resolution of the litigation. The court gave the receiver full control over the corporation, and barred Hicks from interfering with the receiver.

After the state court appointed the receiver (and while the state action was pending), Hicks retained Midwest's former counsel, John Pawlowski, to file an interpleader action in the Southern District of Illinois against Hicks and the Witterses, purportedly on Midwest's behalf, to determine the proper ownership of the company's stock. Hicks responded to the interpleader complaint by filing two breach-of-contract counterclaims against Midwest, alleging that Midwest failed to make payments due on a promissory note and a revolving line of credit.

Midwest's receiver then moved to voluntarily dismiss the interpleader action under Federal Rule of Civil Procedure 41(a)(2), arguing that Pawlowski had no authority to sue on Midwest's behalf because Pawlowski had filed the complaint without his authorization. The receiver also sought to dismiss Hicks's counterclaims for lack of jurisdiction, because 28 U.S.C. § 1335, the asserted basis of jurisdiction for the counterclaims, does not confer jurisdiction on an interpleader defendant. The district court granted the motion to voluntarily dismiss, but refused to dismiss Hicks's counterclaims, explaining that they appeared to fall within the court's diversity jurisdiction. Despite the court's decision, Midwest's receiver renewed his motion to dismiss Hicks's counterclaims for lack of subject matter jurisdiction, arguing that Hicks had alleged only residence and not citizenship in Florida. The court granted the motion, but allowed Hicks to amend his counterclaims so that he could properly plead citizenship.

After Hicks amended the counterclaims, Midwest again moved to dismiss, arguing

that Hicks's multiple contacts with Illinois proved him to be a citizen of Illinois, rather than Florida. In attempting to show Hicks's Illinois citizenship, Midwest relied on an affidavit from C. Michael Witters, describing the following close contacts between Hicks and Illinois: (1) ownership of two homes in Mt. Carmel, Illinois; (2) 2001 real estate tax filings stating that one of Hicks's homes was owner occupied; (3) a 1999 marriage license stating that Hicks was a resident of Wabash County, Illinois; (4) a request from 2000 for a dissolution of marriage stating that Hicks was domiciled in Illinois; (5) ownership of mobile home parks in Illinois; (6) ownership of approximately 600 acres of farm land in Illinois; (7) ownership of various business interests located in Illinois, including Web World Internet Services and Hal D. Hicks Mail Transportation, Inc.; (8) ownership of a subdivision development in Illinois; (9) ownership of a registered vehicle in Illinois; and (10) the fact that Hicks's attorneys in the state action are Illinois attorneys. Midwest also asserted that Hicks has a doctor and a checking account in Illinois, and that Hicks belongs to an Illinois Elks Club and an Illinois labor union.

Hicks responded with his own affidavit, listing the following contacts with Florida as proof of his Florida citizenship: (1) home ownership in Daytona Beach Shores since 1988; (2) possession of a Florida driver's license since 1985; (3) purchase of a Port Orange home for his ex-wife and three minor children; and (4) a Florida based primary care physician. Hicks stated in the affidavit that his Illinois contacts were a result of his work for Midwest, and he claimed that he always returned to Florida when his work was finished. When a receiver was appointed for Midwest in July 2001 and the court barred Hicks from actively managing the corporation, Hicks claimed that he moved to Florida full-time with no plans to return to

Illinois. Hicks also proffered a document from the state action—an affidavit from C. Michael Witters stating that Hicks "abandoned" his Illinois home to avoid service of process in the litigation. Hicks believes that this affidavit proves that Witters has inconsistently represented Hicks's citizenship in state and federal court.

Based on these written submissions, the district court determined that Hicks was a citizen of Illinois and dismissed his counterclaims for lack of diversity jurisdiction. The court noted that Hicks had contacts in both Florida and Illinois, but explained that Hicks owned "vastly more real estate in Illinois," and that all of his business interests were in Illinois. The court observed, further, that Hicks belonged to two Illinois organizations and paid significant amounts of Illinois taxes. The court concluded that, considering "all of the circumstances and the totality of Mr. Hicks' conduct," Hicks was a citizen of Illinois. The court's somewhat cursory order, however, never explained how any of these particular factors disproved Hicks's claim of Florida citizenship, nor did it discuss Hicks's intent or the significance of his move to Florida in July 2001.

Hicks filed a motion to reconsider within ten days of the court's decision, arguing that Witters's affidavit and Midwest's briefs had fraudulently misrepresented several of his contacts with Illinois in an attempt to defeat federal jurisdiction. Hicks proffered a second affidavit stating that he had filed a manifestation of domicile in Florida in 1991, that he was not a member of any Illinois unions, that all tax returns filed in Illinois were non-resident returns, and that he did not farm the six hundred acres of land he owned in Illinois. Hicks also attached several pleadings from the state action in which Witters, acting on Midwest's behalf, claimed that Hicks was a resident of Florida. The district court de-

nied the motion, stating that the court "remains persuaded that its rulings are correct."

## Analysis

To determine an individual's citizenship for diversity purposes, courts look to the state of the individual's domicile. *Dakuras v. Edwards*, 312 F.3d 256, 258 (7th Cir. 2002). Domicile has two elements: (1) physical presence or residence in a state and (2) an intent to remain in the state. *Id.; Denlinger v. Brennan*, 87 F.3d 214, 216 (7th Cir.1996). This test works well for cases in which both elements naturally coincide, but it is becoming increasingly outdated as more people buy second or even third residences in different states; in these situations, the test can turn into a complex, even arbitrary, inquiry into an individual's intent. *Galva Foundry Co. v. Heiden*, 924 F.2d 729, 730 (7th Cir.1991). In more complex cases, courts have tried to glean intent from the following factors: current residence, voting registration and voting practices, location of personal and real property, location of financial accounts, membership in unions and other associations, place of employment, driver's license and automobile registration, and tax payments. *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir.1994); *Lundquist v. Precision Valley Aviation, Inc.*, 946 F.2d 8 (1st Cir.1991); 13B CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3612 (2d ed.1984). The existence of one or more of these factors may weigh in favor of a finding of citizenship, but no single factor is conclusive. WRIGHT ET AL., § 3612. The party seeking to establish jurisdiction bears the burden of proof. *Sapperstein v. Hager*, 188 F.3d 852, 855 (7th Cir.1999).

Hicks argues on appeal that the district court erred in its decision by failing to consider his contacts with Florida when it declared him a citizen of Illinois. We review de novo the district court's grant of the motion to dismiss for lack of subject matter jurisdiction. *Id.* However, we review a district court's resolution of jurisdictional factual issues for abuse of discretion. *Id.* at 856.

Circuit Rule 50 requires district court judges to provide reasons for decisions that terminate litigation. The purposes behind the rule are threefold: (1) to create mental discipline in judges, (2) to assure the parties that the court has considered the important arguments, and (3) to enable a reviewing court to know the reasons for judgment. *DiLeo v. Ernst & Young*, 901 F.2d 624, 626 (7th Cir.1990). To comply with the mandates of the rule, district courts must clearly analyze the facts of a case in relation to the law before reaching a decision. *W. States Ins. Co. v. Wisc. Wholesale Tire, Inc.*, 148 F.3d 756, 758 (7th Cir.1998). In its opinion granting the motion to dismiss, the district court first described the law governing domicile. Next, it listed the contacts that Hicks has with Illinois and Florida, as stated by the parties in their respective affidavits. Then, the court concluded that Hicks was an Illinois citizen for diversity purposes. But why? The court never explained how the relevant facts intersected with the law:

> Here, Hicks states that his current residence is Florida and he has a Florida driver's license. He has personal and real property in both Illinois and Florida, but he appears to own vastly more real estate in Illinois. As Midwest has noted, he has significant business interests in Illinois, indeed all of his business interests are in Illinois. He also belongs to two Illinois organizations and he pays significant amounts of Illinois taxes presumably on both his Illinois real estate and on his business interests. Considering all of the circumstances and the totality of Mr. Hicks's conduct, the

Court finds that for purposes of diversity jurisdiction, Mr. Hick is a citizen of Illinois.

The court's explanation makes no reference to several of Hicks's statements in his affidavit. For example, the court gave no reason for rejecting Hicks's claim that his contacts with Illinois were a byproduct of his work in Illinois. Nor does the opinion explain why the court rejected Hicks's claim that he always returned to Florida when his work in Illinois was complete.

But the most important of Hicks's statements unaddressed by the court is the claim that he left Illinois for Florida in July 2001 with no intent to return. This statement, if true, would have controlled the court's citizenship decision, as it would establish that Hicks changed his domicile from Illinois to Florida before this action commenced, making him a Florida citizen for diversity purposes. To change one's domicile, an individual must be present in the new state and intend to remain in the new state indefinitely. *Dakuras,* 312 F.3d at 259; *Denlinger,* 87 F.3d at 216. Hicks stated in his affidavit to the district court that he left Illinois for Florida when a receiver was appointed to run Midwest on July 25, 2001, and that he intended to remain in Florida indefinitely, with no intent to return to Illinois on a regular basis.

Midwest admits on appeal that Hicks did in fact leave Illinois for Florida in July 2001 and has not returned since, but the company argues that the court should not consider the move as a change of domicile because Hicks was attempting to avoid service of process in Illinois and create federal jurisdiction in this case. However, this argument is without merit, because Hicks's motive in moving to Florida is irrelevant as long as his intent to change his domicile is "bona fide." *See Dakuras,* 312 F.3d at 259; *see also Galva Foundry,* 924 F.2d at 730–31 (finding that the defen-

dant had not changed his domicile, because his contacts with the new state did not establish his intent to live there indefinitely). Thus, the issue properly presented to the district court was whether Hicks's intent to change his domicile was indeed bona fide. *See Dakuras,* 312 F.3d at 259.

Even after closely analyzing the district court's opinion, we cannot tell whether the court ever answered this question. As a result, we cannot properly determine whether the district court committed legal error in its analysis, and Hicks is left with the impression that his arguments before the district court were ignored. Therefore, the decision of the district court must be vacated and remanded so that the court may properly consider Hicks's statements of intent regarding his citizenship.

On remand the district court should consider conducting an evidentiary hearing to determine Hicks's domicile. When the district court compares Hicks's contacts with Illinois and Florida to his declaration of intent to reside in Florida indefinitely, the court will need to determine what weight to give to the declaration. *See Prakash v. American University et al.,* 727 F.2d 1174, 1181 (D.C.Cir.1984). This determination, as it depends upon the credibility of the declaration and Hicks's credibility as a witness, is difficult to make solely on the basis of a paper record. *See Sapperstein,* 188 F.3d at 856 (questioning credibility determinations based solely on affidavits in determining subject matter jurisdiction); *see also Mendiola v. Schomig,* 224 F.3d 589, 598 n. 4 (7th Cir.2000) (Rovner, J., dissenting) (noting that credibility assessments from a paper record are unreliable); *Medeco Security Locks, Inc. v. Swiderek,* 680 F.2d 37, 38 (7th Cir.1981) (holding that a hearing must be held to determine credibility in preliminary injunction cases); *United States v. Cortina,* 630 F.2d 1207, 1214 n. 4 (7th Cir.1980)

(stating that the basis for judicial deference to a district court's credibility determination is normally weakened in the absence of a hearing). Thus, because Hicks's contacts point to both Illinois and Florida as possible domiciles, and Hicks claims Florida as his home, an evidentiary hearing, it would appear, may be necessary to determine the credibility of his citizenship claim.

### Conclusion

For these reasons, the judgment dismissing this case is vacated and the matter remanded to the district court for further proceedings.