In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 05-2637

LUCILLE TAGLIERE,

*Plaintiff-Appellant*,

*v.*

HARRAH'S ILLINOIS CORPORATION,

*Defendant-Appellee*.

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 04 C 5258—**Arlander Keys**, *Magistrate Judge*.

———————

ARGUED FEBRUARY 24, 2006—DECIDED MAY 3, 2006

———————

Before BAUER, POSNER, and WILLIAMS, *Circuit Judges*.

POSNER, *Circuit Judge*. The defendant owns and operates a riverboat casino that at the time of the plaintiff's accident had for the previous two years been moored to a pier on a navigable portion of the Des Plaines River in Illinois; Illinois law permits a casino boat to be moored indefinitely. The plaintiff was playing a slot machine when the stool she was leaning against collapsed and she fell, injuring herself. The boat was stationary when the accident occurred rather than rocking back and forth in the wash of a passing boat. Nevertheless the plaintiff filed

suit in federal district court under the admiralty law. The defendant moved to dismiss the suit on the ground that it was not within the admiralty jurisdiction. The district court granted the motion.

Had the casino been located on the pier rather than in a boat moored to it, there would be no argument that the plaintiff's claim was an admiralty claim. Since the boat was moored indefinitely, it could be thought the equivalent of landfill, and an accident occurring on landfill adjacent to navigable waters is not within the admiralty jurisdiction unless (as we'll see) the accident involved the boat's colliding with or otherwise damaging something on the land. The accident in our case had nothing to do with the fact that the casino was on a boat afloat on a navigable stream rather than sitting on dry land. And so whatever distinctive rules of liability admiralty courts have developed would be no better suited, and perhaps would be worse suited, to the resolution of this accident case than ordinary state tort law would be. There is, therefore, common-sense appeal to the district court's ruling that the suit is not within the admiralty jurisdiction.

But the most important requirement of a jurisdictional rule is not that it appeal to common sense but that it be clear. *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 202 (1988); *Hoagland v. Sandberg, Phoenix & Von Gantard, P.C.*, 385 F.3d 737, 739-40 (7th Cir. 2004); *In re Kilgus*, 811 F.2d 1112, 1117 (7th Cir. 1987); *Cohen v. Empire Blue Cross & Blue Shield*, 176 F.3d 35, 42 (2d Cir. 1999); *Long v. Sasser*, 91 F.3d 645, 647 (4th Cir. 1996). It is very unfortunate when parties are not sure which court they should be litigating their dispute in, as the case at hand illustrates. The plaintiff brought suit within the three-year statute of limitations applicable to admiralty tort suits, 46 U.S.C. App. § 763a;

*Alderman v. Pacific Northern Victor, Inc.*, 95 F.3d 1061, 1065-66 (11th Cir. 1996); *Usher v. M/V Ocean Wave*, 27 F.3d 370, 371 (9th Cir. 1994) (per curiam), but the statute of limitations applicable to personal-injury suits under Illinois law is only two years, 735 ILCS 5/13-202, so that if the ruling stands the plaintiff is barred from any judicial relief because she sued more than two years after the accident.

Congress has extended the admiralty jurisdiction to "all cases of damage or injury, to person or property, caused by a vessel on navigable water." Extension of Admiralty Jurisdiction Act, 46 U.S.C. App. § 740. Since "vessel" has been interpreted to include the vessel's fixtures, furniture, and other "appurtenances," *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 535 (1995); *Scott v. Trump Indiana, Inc.*, 337 F.3d 939, 943 (7th Cir. 2003); *Anderson v. United States*, 317 F.3d 1235, 1237-38 (11th Cir. 2003), the injury resulting from the defective stool in this case was an injury caused by a vessel. *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 626-28 (1959); *Palmer v. Fayard Moving & Transportation Corp.*, 930 F.2d 437, 441 (5th Cir. 1991), and cases cited there. The vessel was on navigable waters, moreover, and while the Supreme Court has now held that a boat that "has been permanently moored or otherwise rendered practically incapable of transportation or movement" is not a "vessel" for purposes of admiralty jurisdiction, *Stewart v. Dutra Construction Co.*, 543 U.S. 481, 494 (2005), there has been no showing that the boat in our case, though stationary for the past two years, is *permanently* moored in the Court's sense (disabled from sailing) and is thus the equivalent of landfill.

To subject an accident that occurs on a vessel afloat on a navigable body of water, and that is caused by the vessel or by some object in or attached to it, to the admiralty jurisdiction is a natural application of the Extension of

Admiralty Jurisdiction Act. *St. Hilaire Moye v. Henderson*, 496 F.2d 973, 979 (8th Cir. 1974); 1 Robert Force & Martin J. Norris, *The Law of Maritime Personal Injuries* § 1:17 (5th ed. 2005); David W. Robertson & Michael F. Sturley, "The Admiralty Extension Act Solution," 34 *J. Maritime L. & Commerce* 209, 239-43, 269-73, 297 (2003); Russell J. Smith, Note, "Congress Giveth and the Fifth Circuit Taketh Away: Post *Executive Jet* Viability of the Admiralty Extension Act," 6 *U. San Francisco Maritime L.J.* 609 (1994). But this is on the assumption that the Act is indeed, as its title and language suggest, an independent basis of federal jurisdiction—independent, that is, of the basic grant of admiralty jurisdiction in 28 U.S.C. § 1333(1). And so the Eighth Circuit held in the *St. Hilaire* case, cited above, though the Supreme Court left the question open in *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, *supra*, 513 U.S. at 543 n. 5, as it had earlier done in *Sisson v. Ruby*, 497 U.S. 358, 359 n. 1 (1990). But the Fifth and Eleventh Circuits have rejected (though without citing) *St. Hilaire*. *Sohyde Drilling & Marine Co. v. Coastal States Gas Producing Co.*, 644 F.2d 1132, 1135-36 (5th Cir. 1981); *Crotwell v. Hockman-Lewis, Ltd.*, 734 F.2d 767, 768 (11th Cir. 1984). They have done this on the basis of legislative history. That history indicates that the Act's purpose was merely to make clear that accidents caused by boats on navigable waters are within the admiralty jurisdiction even if the damage caused by the accident was to something on the land. H.R. Rep. No. 1523, 80th Cong., 2d Sess. (1948); S. Rep. No. 1593, 80th Cong., 2d Sess. (1948).

We do not think that the legislative history should override the broad statutory language, which provides a clear and simple jurisdictional test for cases like this, in contrast to the vague "maritime nexus" (or "connection") test ("the party seeking to invoke maritime jurisdiction must

show a substantial relationship between the activity giving rise to the incident and traditional maritime activity," *Sisson v. Ruby*, *supra*, 497 U.S. at 364) that is used to determine jurisdiction under section 1333(1), which confers but does not define admiralty jurisdiction. Our case would pass that test as well; vagueness has it uses.

The main practical use of the "connection" test has been to expel from the admiralty jurisdiction freak cases. Thus, in describing the application of the test the Supreme Court in *Grubart* cited a case involving a plane crash in which a portion of the wreckage slid into navigable waters, *Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249 (1972), the case of a swimmer diving off a pier into navigable waters, *Chapman v. City of Grosse Pointe Farms*, 385 F.2d 962 (6th Cir. 1967), and the case of a motorist rear-ended while waiting for a ferry on the ferry's landing, which happened to be a floating pontoon. *Peytavin v. Government Employees Ins. Co.*, 453 F.2d 1121 (5th Cir. 1972). *Grubart* itself involved the flooding of tunnels and basements in Chicago caused by the fact that months earlier a crane sitting on a barge had driven piles too far into a riverbed above a tunnel.

Yet unusual as were the facts in *Grubart*, the case was about an appurtenance (the crane) of a boat (a barge) afloat on navigable waters and an accident, albeit on land, caused by the handling of the appurtenance. A passage in the Court's opinion suggests that the Court thought the case rather simple: "This Court has not proposed any radical alteration of the traditional criteria for invoking admiralty jurisdiction in tort cases, but has simply followed the lead of the lower federal courts in rejecting a location rule so rigid as to extend admiralty to a case involving an airplane, not a vessel, engaged in activity far removed from anything traditionally maritime." 513 U.S. at 542. The "location" rule at its broadest was that any accident that occurs on naviga-

ble waters is within the admiralty jurisdiction. *The Plymouth*, 70 U.S. (3 Wall.) 20, 36 (1865). That would have encompassed the airplane, swimmer, and motorist cases, and the Court made clear in *Grubart* that it wouldn't go that far. When a boat is involved, however, the location rule is not only thoroughly compatible with the language of the Extension of Admiralty Jurisdiction Act, but appears to have survived *Grubart* and thus to be the test under the general admiralty jurisdiction conferred by 28 U.S.C. § 1333(1), as well.

*Weaver v. Hollywood Casino-Aurora, Inc.*, 255 F.3d 379, 386-87 (7th Cir. 2001), found even the "connection" test of *Grubart* and *Sisson* satisfied in a case like the present one, the main difference being that the injury was to a crewmember of the gambling boat rather than to a passenger. An injury to a crewmember is somewhat more likely to affect maritime commerce than an injury to a passenger, because the crewmember might be vital to the operation of the boat and difficult to replace immediately. Yet even an injury to a passenger could have a disruptive effect, if the boat had to make an unscheduled stop to get him to a hospital (not that that could have happened here, since the boat was moored), or if the injury revealed a dangerous condition that required time-consuming repairs. We do not think it necessary to split these hairs—especially since effect on maritime commerce is not necessary to admiralty jurisdiction.

We acknowledge that the distinctive substantive and procedural features of admiralty law, such as the longer statute of limitations and the absence of a right to a jury trial, were not designed for the kind of accident that occurred here, an accident that owed nothing to its maritime setting. So our suggested rule encroaches on a regulatory domain that might well be thought to belong more properly

to state courts and legislatures than to federal admiralty courts. But to decide in each case whether admiralty law or state law would make a better fit with the particular circumstances of the accident that had given rise to the suit would make the determination of jurisdiction hopelessly uncertain. It is not a price worth paying for the slightly better match of law to fact that would result.

We say "slightly" better because the tort principles applied to maritime accidents that as in this case mirror terrestrial accidents are similar. But this is not to deny the significance of different limitations periods and a different factfinder (judge versus jury). And while these differences are to an extent offsetting—the longer statutory period favors the plaintiff but the denial of jury trial favors the defendant—others may not be. We summarize them briefly: (1) Nonpecuniary damages are generally disallowed in personal-injury suits under admiralty law. Robert Force, "Tort Reform by the Judiciary: Developments in the Law of Maritime Personal Injury and Death Damages," 23 *Tulane Maritime L.J.* 351, 361 (1999); see, e.g., *In re Amtrack "Sunset Limited" Train Crash*, 121 F.3d 1421, 1429 (11th Cir. 1997). (2) A shipowner owes a uniform duty of care to everyone lawfully on board his ship, whereas some states still impose different standards of care on landowners with respect to different classes of visitors, such as business invitees and licensees. *Kermarec v. Compagnie Generale Transatlantique, supra*, 358 U.S. at 630; *Everett v. Carnival Cruise Lines*, 912 F.2d 1355, 1358 (11th Cir. 1990). (3) Admiralty tort plaintiffs can sue the vessel itself even when the owner has no liability. 2 Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 21-3 (4th ed. 2004); see, e.g., *United States v. Republic Marine, Inc.*, 829 F.2d 1399, 1400-01 (7th Cir. 1987). (4) The Limitation of Shipowners' Liability Act, 46 U.S.C. App. § 181, generally limits a shipowner's

liability to the value of his investment in the vessel and freight, other than in personal-injury or wrongful-death actions.

Without meaning to minimize these differences, which figure importantly in some cases, an effort to determine admiralty jurisdiction case by case by estimating the relative closeness of fit of state law and admiralty law to the particular circumstances of the case would create more uncertainty than efficiency. We conclude that the district court erred in dismissing the suit, though it is open to the defendant to show on remand, if it can, that its boat was permanently rather than merely indefinitely moored when the accident occurred and was therefore no longer a "vessel" for purposes of admiralty jurisdiction. The difference between "permanently" and "indefinitely" in this context is vague and has not been explored by the parties. The *Stewart* case suggests that the boat must be permanently incapacitated from sailing. Yet maybe—by analogy to the difference between domicile and residence—a boat also is "permanently" moored when its owner intends that the boat will never again sail, while if he has not yet decided its ultimate destiny it is only "indefinitely" moored. These are matters for exploration on remand.

REVERSED AND REMANDED.

A true Copy:

Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*